Karen **MANOS**, Relator,

v.

**FIRST BANK MINNEHAHA,**
**Commissioner of Economic**
**Security, Respondents.**

No. C9–84–1107.

Court of Appeals of Minnesota.

Nov. 13, 1984.

Joseph Belzer, Law Office of Daniel Davis, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Heard, considered and decided by POPOVICH, C.J., and PARKER and RANDALL, JJ.

## OPINION

PARKER, Judge.

Karen Manos appeals from a decision of the Commissioner of Economic Security that she had committed gross misconduct and was thus disqualified from receiving unemployment compensation benefits because she failed to report net overpayments totaling $739.57 over a period of two months. We affirm.

## FACTS

Manos was employed by First Bank Minnehaha from June 27, 1978, through December 7, 1983. She was an accounts ser-

vice representative, and her duties involved helping customers balance their checkbooks.

She worked full-time for $6.35 per hour. Her regular gross pay every two weeks was $550.01. From October 1, 1983, through November 30, 1983, she was erroneously paid at the rate of $9.52 per hour. Her four paychecks for this period thus averaged 50 percent more than usual for gross pay and 44 percent more for net pay (this worked out to about $184 net more per pay period). Manos never reported the overpayments to her employer.

When the overpayments were discovered her employers immediately confronted her and asked for an explanation. She said she had noticed some extra cash and offered to repay any amounts owing. She denied knowing she had been overpaid.

Her explanation was that her husband had begun working a new job after being laid off, and she attributed the extra money to his income. She testified that he was paid at about the same time she was and that her practice was to add their checks together and buy money orders to pay their bills. She also testified that the amount of her paychecks varied depending on the amount of overtime she worked and had fluctuated by as much as $86 in the past. During the period in question, however, she averaged only 1.5 hours of overtime per pay period.

Her supervisor testified that Manos had once detected an underpayment for overtime work on her check and immediately reported it to her employer.

The claims deputy determined that Manos had committed gross misconduct and was therefore completely disqualified from receiving benefits for the benefit year. On appeal the referee found that she knew she had been overpaid, and he affirmed the claims deputy's decision. The Commissioner's representative also affirmed.

## ISSUES

1. What is the standard of proof in gross misconduct cases?

2. Does the record support the Commissioner's determination that Manos had committed gross misconduct as defined in Minn.Stat. § 268.09, subd. 1(3) (Supp.1983)?

3. Does appellant's conduct fail to constitute gross misconduct because the employer violated termination procedures set forth in an employee manual?

## DISCUSSION

### I

Appellant argues that the standard of proof in gross misconduct cases should be something between the "preponderance of the evidence" standard, which applies to ordinary misconduct cases, and the "beyond a reasonable doubt" standard that applies to criminal cases. She argues that this higher standard is necessary because the penalty for gross misconduct is severe: total disqualification for the benefit year and cancellation of all wage credits from the discharging employer. *See* Minn.Stat. § 268.09, subd. 1(3) (Supp.1983). Appellant argues that there is a further penalty of "damage to one's future employment and promotional prospects."

Gross misconduct is defined as:

misconduct involving assault and battery or the malicious destruction of property or arson or sabotage or embezzlement or any other act, including theft, the commission of which amounts to a felony or gross misdemeanor. * * *

If an individual is convicted of a felony or gross misdemeanor for the same act or acts of misconduct for which the individual was discharged, the misconduct is conclusively presumed to be gross misconduct if it was connected with his work.

Minn.Stat. § 268.09, subd. 1(3) (Supp.1983).

In *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 209 N.W.2d 397 (1973), the employee was discharged for theft and the appeal tribunal used the "beyond a reasonable doubt" standard to find that he was not disqualified from receiving benefits. The Commissioner's representative reversed, noting that the burden was only

"a fair preponderance of the evidence." The court upheld the Commissioner's decision:

> The burden to prove that the employee is disqualified from receiving benefits under *Minn.St. 268.09, subd. 1,* is upon the employer. The employer must establish by the greater weight of the evidence that the employee was guilty of the misconduct charged.

*Id.* at 459–60, 209 N.W.2d at 400 (emphasis added).

■ When *Lumpkin* was decided, Minn. Stat. § 268.09, subd. 1 (Supp.1983), included provisions for both misconduct and gross misconduct. We interpret Lumpkin to hold that the standard of proof—a preponderance of the evidence—is the same for both misconduct and gross misconduct. Because the penalty is strictly administrative, we can find nothing in the law that calls for a higher standard of proof.

## II

■ Appellant first contends that the Commissioner erred in finding she had committed gross misconduct because the employer claimed only that she was terminated for misconduct. This argument misconceives the relative roles of the commissioner and the employer. Minn.Stat. § 268.10, subd. 2 (Supp.1983), provides:

> An official, designated by the commissioner, shall promptly examine each claim for benefits filed * * * and, on the basis of the facts found, shall determine whether or not such claims are valid * *. * * * If * * * the employer makes an allegation of disqualification * * * the issue thereby raised shall be promptly determined by said official * * *.

It is the commissioner's role to make all determinations as to eligibility and disqualification, not the employer's.

■ Appellant next contends that there is no evidence that she intended to commit theft so she should not be disqualified for gross misconduct. The scope of review in economic security cases is limited. The findings must be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed. *Dawson v. Northland Beverages, Inc.,* 347 N.W.2d 287, 289 (Minn.Ct.App.1984) (quoting *White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983)).

Gross misconduct is defined in part as any act that amounts to a felony or gross misdemeanor. Minn.Stat. § 609.52, subd. 2 (1982), provides that one who does the following commits theft:

> (1) Intentionally and without claim of right takes, uses, transfers, conceals *or retains possession of movable property of another without his consent* and with intent to deprive the owner permanently of possession of the property; or

> *   *   *   *   *   *

> (6) Finds lost property and, knowing or having reasonable means of ascertaining the true owner, appropriates it to his own use or to that of another not entitled thereto without first having made reasonable effort to find the owner and offer and surrender the property to him
> * * *.

(Emphasis added). Theft of more than $250 is a felony. Minn.Stat. §§ 609.02, subd. 2 (1982); 609.52, subd. 3(2) (Supp. 1983).

Appellant relies on the testimony of one of her supervisors, who stated during the hearing:

> I agree with Karen as she said she noticed there was extra cash but did not know she was overpaid. * * * I do agree with what she said as far as extra cash but not knowing it.

She argues that this testimony, together with her own testimony that she did not know she was being overpaid, should resolve the issue of her intent.

■ Intent, however, may be proved by a person's conduct in light of the surrounding circumstances. *State v. Hardimon,* 310 N.W.2d 564, 566 (Minn.1981). The referee found that she knew she was being overpaid and that her statements to

the contrary were not credible. The Commissioner's representative accepted the referee's assessment of her credibility. Again, it is the Commissioner's role, rather than the employer's, to determine the facts and evaluate the credibility of witnesses.

■ Evidence in the record supports the finding that Manos was aware of the overpayments. Her paychecks reflected 44 percent more net income than usual. She occupied a position of trust at the bank, and her job duties included helping customers balance checkbooks. She had immediately noticed an *underpayment* for her overtime work. Furthermore, she offered to repay the overpaid amounts before bank officials even told her how much they totaled. This evidence indicates that more likely than not she was aware of the overpayments.

■ Since she was aware of the overpayments, her failure to report them could fall within the theft statute and thus can be considered gross misconduct connected with her employment which disqualifies her from benefits.

### III

Manos also contends her immediate termination violated the procedures set forth in an employee manual. The manual itself was not offered or received into evidence, and we have little basis for determining whether the employer departed or not. A few sentences from the manual were read into the transcript, from which we must conclude that the employer had the discretion to terminate immediately for serious misconduct. These facts are more than sufficient to distinguish this case from *Hoemberg v. Watco Publishers, Inc.*, 343 N.W.2d 676 (Minn.Ct.App.1984), where the employer failed to follow handbook procedures in responding to minor rule infractions.

### DECISION

Affirmed.