**STATE of Minnesota, Appellant,**

v.

**Anthony Richard SISTRUNK,
Respondent.**

**No. C7–88–157.**

Court of Appeals of Minnesota.

Sept. 20, 1988.
Review Denied Nov. 23, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Linda K. Jenny, Asst. County Atty., Therese Galatowitsch, Minneapolis, for appellant.

Peter A. Cahill, Minneapolis, for respondent.

Heard, considered, and decided by NORTON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge

Appeal arises from the trial court's dismissal of respondent's indictment for first degree murder for failure to bring this matter to a speedy trial.

## FACTS

Respondent/defendant, Anthony Richard Sistrunk, a/k/a James Mead, a/k/a Tony Mead, was convicted of murder in Salem County, New Jersey and confined at Yardville Correctional Center from March 1972 until December 1974 when he escaped.

In January 1975, while a fugitive from justice, respondent was an accomplice to a murder committed in the state of New York.

In September 1975, a warrant was issued from California for respondent's arrest on charges of first degree murder. Also in September 1975, respondent was arrested in Florida for possession of a stolen vehicle and as a fugitive from justice. Respondent told Florida authorities that he had murdered Keith Miller in Minneapolis, Minnesota. Minnesota authorities were informed of respondent's presence in Florida and a "hold" was placed on respondent.

In October 1975, respondent was indicted by Hennepin County for the August 1975 death of Keith Miller. Respondent was also charged with aggravated robbery.

New York extradited respondent from Florida, tried and convicted respondent of second degree murder. Respondent was given a fifteen-year to life sentence with a consecutive life sentence pending in New Jersey. While in New York, respondent was also convicted of attempted escape.

In September 1977, respondent was tried and convicted of first degree murder in Los Angeles County, California and given another pending consecutive life sentence.

In January 1987, Hennepin County Sheriff's Department traced respondent to Great Meadow Correctional Facility in Comstock, New York where respondent had been confined since February 1977. Over respondent's objection, he was extradited to Minnesota in August of 1987.

By order dated November 30, 1987, respondent's indictment for first degree murder was dismissed for lack of speedy trial. Appeal followed.

## ISSUE

1. Did the trial court err in dismissing respondent's indictment for first degree murder for lack of speedy trial?

## ANALYSIS

The trial court relied upon the United States Supreme Court's analysis of an accused's constitutional right to speedy trial in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

In *Barker* the Supreme Court identifies and discusses four factors trial courts should assess in determining claims of failure to provide a speedy trial: 1) length of delay; 2) reason for delay; 3) defendant's assertion of the right to speedy trial, and 4) prejudice to defendant. *Id.* at 530, 92 S.Ct. at 2192. *See also State v. Rachie*, 427 N.W.2d 253 (Minn.Ct.App.1988).

No one of the four *Barker* factors is either a necessary or sufficient condition to finding the accused was deprived of the constitutional right to speedy trial. The factors are related and should be considered together with other relevant circumstances. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193.

Among other relevant circumstances is the fact respondent is presently under sentence in New York with consecutive life

sentences to be served in other jurisdictions. In addition, the seriousness of the alleged offense is relevant. Here the indictment of respondent is for first degree murder, the most serious of offenses. Keeping this in mind we examine the *Barker* factors.

### A. Length of Delay

■ Until there is some delay of defendant's trial which is presumptively prejudicial, there is no necessity to inquire into the other factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Here, the murder of Keith Miller occurred in August of 1975. Minnesota authorities knew respondent was arrested in Florida as early as September 1975. Florida turned respondent over to New York police in September 1975. Although respondent was indicted in Minnesota in October 1975, respondent's indictment was not acted upon until January 1987. The twelve-year delay was determined by the trial court to weigh against the state and was sufficient to trigger further inquiry as to the remaining *Barker* factors. We agree with the trial court that a twelve-year delay creates a presumption of prejudice.

### B. Reason for Delay

■ The second factor in *Barker* is the reason for the delay of trial, including whether it is attributable to respondent or the state. The reason for delay is closely related to length of delay and different weights should be assigned for different reasons. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Delays caused by negligence or by overcrowded courts are weighed against the state, because the state is ultimately responsible for such circumstances. *Id.*

Here the state's negligence in pursuing this case is unexplained. John Searles, a Minneapolis police officer in 1975, testified at the omnibus hearing that he had investigated the 1975 murder. Florida authorities told him respondent confessed to the murder of Keith Miller and New York authorities were transporting respondent to New York to face murder and robbery charges there. Searles also stated he received a

copy of respondent's confession in September 1975. In October 1975, a Minnesota grand jury indicted respondent for the Minneapolis killing. Searles testified he knew of the grand jury proceedings, and could not recall whether a detainer was filed in 1975. The state has conceded on the record no detainer was ever filed against respondent.

Captain Lynus Bloedow of the Hennepin County Sheriff's Department Warrant Division testified he first got involved with this case in December 1986 while reviewing old cases. Bloedow found a reference to respondent being in New York in the file and he called the New York Police Department and the New York Department of Corrections. From the latter, he learned respondent was serving a sentence in Comstock Prison in New York. Bloedow then contacted an assistant county attorney who placed a detainer with Comstock Prison on January 20, 1987. Bloedow stated that after reviewing the file, it took only two phone calls and about five minutes to learn of respondent's whereabouts.

The state not only conceded no detainer was placed on respondent prior to January 1987, but it has not shown any effort at all was made to locate respondent after the indictment in 1975. Since he was sentenced and incarcerated in New York in 1977 and since he has also been sentenced in New Jersey and California, it is virtually certain respondent could have been located with little effort well before January 1987. The state's failure to follow up on the indictment and conduct any inquiry into respondent's whereabouts weighs heavily against the state under the second *Barker* test.

### C. Assertion of Right to Speedy Trial

■ The third factor to be considered is whether and how respondent asserts his right to speedy trial. *See, e.g., State v. Brooke*, 381 N.W.2d 885, 888 (Minn.Ct.App. 1986). In this case, respondent did not make such a demand. While this factor does not weigh against the state, it likewise cannot be held against respondent since he was not informed of the indictment and no

detainer was placed on him until January, 1987.

### D. Prejudice to Defendant

 The final *Barker* factor is prejudice to respondent's case caused by the delay of his trial. Concerning this factor the trial court found that "the defendant has not made a strong showing of prejudice * * *."

However, the U.S. Supreme Court expressly *rejects* the notion that an affirmative demonstration of prejudice is necessary to prove a denial of the constitutional right to a speedy trial. *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed. 2d 183 (1973), *see also Brooke,* 381 N.W.2d at 889.

The *Barker* court stated:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker,* 407 U.S. at 533, 92 S.Ct. at 2193.

 Thus, while the factor of prejudice in this matter may not be determinative, two of the other factors weigh heavily against the state and support the trial court's determination that defendant was deprived of his right to speedy trial.

When the respondent's constitutional right to speedy trial has been deprived, dismissal, while severe, is the remedy. *Barker,* 407 U.S. at 522, 92 S.Ct. at 2188, *see also State v. Stitzel,* 351 N.W.2d 409, 410 (Minn.Ct.App.1984). Under these facts the severity of the remedy is mitigated by the fact respondent has been sentenced to three consecutive life sentences in other jurisdictions.

### DECISION

The trial court properly weighed the factors mandated by the U.S. Supreme Court. We hold under these facts the trial court did not err in dismissing respondent's indictment for first degree murder for lack of speedy trial.

AFFIRMED.