**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0921**

State of Minnesota,
Appellant,

vs.

David Ernest Osorio,
Respondent.

**Filed December 14, 2015**
**Reversed and remanded**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CR-13-15511

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Mary F. Moriarty, Hennepin County Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

**S Y L L A B U S**

The presumption that, in the absence of proof to the contrary, mail properly addressed and sent with postage prepaid is duly received by the addressee applies in a criminal case.

**OPINION**

**LARKIN**, Judge

In this pretrial appeal, the state challenges the district court's speedy-trial dismissal of two charges of first-degree criminal sexual conduct. Because respondent's constitutional right to a speedy trial was not violated, we reverse and remand.

**FACTS**

In March 2007, the Mound Police Department began investigating an allegation that respondent David Ernest Osorio sexually assaulted his minor stepdaughter. N.O., Osorio's wife and the alleged victim's mother, reported the allegation. Later that month, Mound Police Detective Niccum submitted the case to the Hennepin County Attorney's Office for charging, but no charges were filed. Shortly thereafter, Osorio moved to California. In November, N.O. called the Mound Police Department to report that Osorio was living with his mother in Perris, California, a city within Riverside County. About three weeks later, Mound Police Detective Wittke contacted the Riverside County Sheriff's Department and obtained Osorio's address in Perris. The next day, Detective Wittke spoke to Osorio by telephone, and Osorio provided his contact information at his mother's Perris home. In January 2008, Detective Wittke resubmitted the case to the Hennepin County Attorney's Office for charging. Once again, no charges were filed.

In September 2012, Detective Wittke received a voicemail from N.O., who stated that another of her minor daughters had alleged that Osorio sexually assaulted her. Detective Wittke spoke with a sergeant from the Riverside County Sheriff's Department, who confirmed that his department had been in contact with Osorio at the Perris address.

2

At Detective Wittke's request, a Riverside County sheriff's deputy attempted to interview Osorio, but Osorio refused to be interviewed. In November, N.O. and Detective Wittke each called Osorio. Osorio told N.O. that nothing happened and hung up. Osorio told Detective Wittke that he had been told by an attorney that the statute of limitations had run, and he declined to discuss the allegations.

On May 1, 2013, appellant State of Minnesota charged Osorio with two counts of first-degree criminal sexual conduct based on the allegations that he sexually abused N.O.'s daughters. Each count alleged that Osorio engaged in sexual penetration with a person under the age of 13. The district court issued a summons and complaint, which described the charges against Osorio and his obligation to appear at all hearings regarding the charges. The district court mailed the summons and complaint to Osorio at his Perris, California address. The postal service did not return the summons and complaint to the district court as undeliverable. On June 6, the district court issued a warrant for Osorio's arrest after he failed to appear at the first hearing on the charges. The warrant information was entered into a national law-enforcement database.

On February 4, 2015, officials with the Riverside County Sheriff's Department arrested Osorio for an unrelated matter. From May 2013 until the time of Osorio's arrest in February 2015, Osorio resided at the same Perris, California, address. The Mound police were aware that Osorio resided at that address, but the state made no additional effort to have Osorio arrested for the charges.

Osorio was extradited to Minnesota and made his first appearance in district court on March 2, 2015. On April 3, Osorio moved to dismiss the charges, alleging a violation

3

of his constitutional right to a speedy trial. On April 8, Osorio made a speedy-trial demand. On May 8, the state informed Osorio that some evidence that had been gathered early in the investigation no longer existed, including audio recordings of phone calls and statements made by Osorio and N.O.

On May 27, the district court dismissed the charges, ruling that the state violated Osorio's right to a speedy trial. The district court found that "[t]he state has not presented any evidence that [Osorio] actually received the summons and complaint, other than . . . court records indicating the documents were mailed and that no [database] notation [indicates] that the mail was returned." The state moved the district court to reconsider its ruling, and the district court denied the motion. The state appeals.

**ISSUE**

Was Osorio's constitutional right to a speedy trial violated?

**ANALYSIS**

The state may appeal from "any pretrial order" so long as "the district court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn. R. Crim. P. 28.04, subds. 1(1), 2(1). "[A] pretrial order will only be reversed if the state demonstrates clearly and unequivocally that the [district] court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Underdahl*, 767 N.W.2d 677, 681 (Minn. 2009) (quotation omitted). "The critical impact requirement has evolved into a threshold issue, so that in the absence of critical impact [appellate courts] will not review a pretrial order." *Id.* (quotations omitted).

4

"Dismissal of a complaint based on a question of law satisfies the critical impact requirement." *State v. Dunson*, 770 N.W.2d 546, 550 (Minn. App. 2009), *review denied* (Minn. Oct. 20, 2009). Because the district court dismissed the charges against Osorio on constitutional grounds, the critical-impact requirement is satisfied. *See State v. Bussmann*, 741 N.W.2d 79, 82 (Minn. 2007 ) (stating that "[c]onstitutional challenges are questions of law").

The United States and Minnesota Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. A speedy-trial challenge presents a constitutional question that this court reviews de novo. *State v. Griffin*, 760 N.W.2d 336, 339 (Minn. App. 2009).

In determining whether a defendant's right to a speedy trial has been violated, Minnesota courts apply the four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). *State v. Widell*, 258 N.W.2d 795, 796 (Minn. 1977). The four factors are "(1) the length of the delay; (2) the reason for the delay; (3) whether and when the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay." *State v. Cham*, 680 N.W.2d 121, 124 (Minn. App. 2004), *review denied* (Minn. July 20, 2004). "None of the factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (quotation omitted). A speedy-trial determination involves a "difficult and sensitive

balancing process." *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. We consider each *Barker* factor in our de novo review.

*Length of the Delay*

"The length of the delay is a 'triggering mechanism' which determines whether further review is necessary." *Windish*, 590 N.W.2d at 315 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). "Where the length of the delay is 'presumptively prejudicial' there is a necessity for inquiry into the remaining factors of the test." *Id*. (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). "The delay in speedy-trial cases is calculated from the point at which the sixth amendment right attaches." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). "[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,'" at the time of formal charging or arrest for the charge, whichever occurs first. *United States v. Marion*, 404 U.S. 307, 313, 321, 92 S. Ct. 455, 459, 463-64 (1971); *see also United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009) ("The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." (Quotation omitted.)). Courts have "generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992). The Minnesota Supreme Court has concluded that a six-month delay "is sufficient to trigger further inquiry." *State v. Corarito*, 268 N.W.2d 79, 80 (Minn. 1978).

In this case, approximately 21 months passed between the date when the state charged Osorio in May 2013 and his arrest in February 2015.[1] The 21-month delay establishes presumptive prejudice and triggers further inquiry.

*Reason for the Delay*

"The second factor in *Barker* is the reason for the delay of trial, including whether it is attributable to [the defendant] or the state." *State v. Sistrunk*, 429 N.W.2d 280, 282 (Minn. App. 1988), *review denied* (Minn. Nov. 23, 1988). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. The state's negligent failure to locate and apprehend a defendant after charging is weighed against the government. *See Doggett*, 505 U.S. at 652-53, 112 S. Ct. at 2691 (weighing the second *Barker* factor against the government because it "made no serious effort" to find the defendant for six years after he was indicted on a drug charge); *Erenas-Luna*, 560 F.3d at 777-78 (concluding that the second *Barker* factor weighs "decidedly" in the defendant's favor where the government's negligent failure to take appropriate actions to apprehend defendant resulted in a three-year delay between indictment and arraignment); *Sistrunk*, 429 N.W.2d at 282 (concluding that "[t]he state's failure to follow up on the indictment

---

[1] The district court used the date of Osorio's arrest in Riverside County as the end of the delay period. Neither party assigns error to that approach.

7

and conduct any inquiry into respondent's whereabouts weighs heavily against the state under the second *Barker* test").

In this case, the law-enforcement department that investigated the allegations against Osorio and referred the case for charging knew where Osorio lived during the 21-month delay period. Even though Osorio's current address was readily available to the prosecuting authority, the state did not attempt to apprehend him. The district court determined that the state's inaction amounted to negligence and not a deliberate attempt to delay. The record supports that determination. The state's negligent failure to apprehend Osorio after formal charging weighs against the state.

Although the state is responsible for the delay, the record does not suggest that the state intentionally acted to delay a trial in this case. Such official bad faith in causing delay would be weighed heavily against the state. *See Doggett*, 505 U.S. at 656, 112 S. Ct. at 2693 ("*Barker* stressed that official bad faith in causing delay will be weighed heavily against the government . . . ."). But "[b]etween diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." *Id*. at 656-57, 112 S. Ct. at 2683. The reason for the delay therefore weighs against the state, but not heavily.

*Whether and When Osorio Asserted His Right to a Speedy Trial*

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32, 92 S. Ct. at 2192-93. The frequency and force of the demand may be weighed when assessing this factor. *Id*. at 528-29, 92 S. Ct. at 2191. An accused

8

"is not to be taxed for invoking his speedy trial right only after his arrest" if he was not aware of the charges against him before he was arrested. *Doggett*, 505 U.S. at 653-54, 112 S. Ct. at 2691. However, if an accused knew of his charges long before his arrest and failed to make a speedy-trial demand until after his arrest, "*Barker*'s third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him." *Id.* at 653, 112 S. Ct. at 2691; *cf. Sistrunk* 429 N.W.2d at 282-83 (stating that a defendant's failure to make a speedy-trial demand could not be held against him because he was not informed of the indictment).

Our analysis of the third *Barker* factor is influenced by the fact that the district court mailed the summons and criminal complaint to Osorio at his Perris address. A summons can be "served on an individual defendant . . . by mailing it to the defendant's last known address." Minn. R. Crim. P. 3.03, subd. 3. And there is a "presumption, in the absence of proof to the contrary, that mail properly addressed and sent with postage prepaid is duly received by the addressee." *Nafstad v. Merchant*, 303 Minn. 569, 569, 228 N.W.2d 548, 550 (1975).

Osorio argues that *Nafstad* does not establish Osorio's receipt of the summons and complaint because it is an "obscure civil case." Osorio's suggestion that the *Nafstad* presumption does not apply in a criminal case is unavailing. The United States Supreme Court has applied the presumption in a criminal case, stating that "[t]he rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed" and that "the fact that receipt of the letter subjects the

9

[sender] to a penalty does not alter the rule." *Hagner v. United States*, 285 U.S. 427, 430, 52 S. Ct. 417, 419 (1932); *see also State v. Mays*, 395 P.2d 719, 721 (Ariz. 1964) (stating that "[i]t is the settled law of this state that there is a strong presumption that a letter properly addressed, stamped and deposited in the United States mail will reach the addressee" and noting that *Hagner* provides "ample support" for the rule "in the criminal law"). We therefore hold that the *Nafstad* presumption applies here.

The district court mailed the summons and complaint to Osorio in May 2013, but Osorio did not assert his right to a speedy trial until April 2015, after his arrest. Osorio does not attempt to rebut the presumption that he received the summons and complaint in the mail. For example, he does not claim that he did not actually receive the summons and complaint or that he was unaware of the charges against him. The district court found that "[t]he state has not presented any evidence that [Osorio] actually received the summons and complaint, other than the . . . court records indicating the documents were mailed and that no [database] notation [indicates] that the mail was returned." But it was unnecessary for the state to prove Osorio's actual receipt of the summons and complaint. Under the *Nafstad* presumption, receipt is presumed. It was incumbent on Osorio to present evidence to the contrary, which he failed to do.

Osorio asserts that even if he is presumed to have received the summons and complaint, "it does not matter." He argues, "After he failed to make the first appearance on these charges it was incumbent on the State to ensure that the bench warrant was executed, [he] was apprehended, and brought to trial. Under these circumstances, [his] failure to exercise his right to speedy trial until his second appearance in court cannot be

held against him." Osorio bases this argument on "*Barker*'s admonition that the State must bring the defendant to trial." We are not persuaded.

Although the Supreme Court stated that "[a] defendant has no duty to bring himself to trial; the State has that duty," the Court also stated that a defendant has a "responsibility" to assert his right to a speedy trial. *Barker*, 407 U.S. at 527-28, 92 S. Ct. at 2190-91. The Supreme Court further stated that "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id*. at 528, 92 S. Ct. at 2191. It emphasized that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532, 92 S. Ct. at 2193. Applying this standard, Osorio's knowing failure to assert his right to a speedy trial prior to his arrest should be weighed against him.

We note that "[a]ssertion of the right to a speedy trial need not be formal or technical, instead the [United States] Supreme Court has looked for any 'action whatever . . . that could be construed as the assertion of the speedy trial right.'" *Windish*, 590 N.W.2d at 317 (quoting *Barker*, 407 U.S. at 534, 92 S. Ct. at 2194). Although the law does not burden a defendant with formalities when it comes to assertion of the right to speedy trial, the defendant must do *something* to assert the right. Like *Barker*, the record here shows no action whatsoever by Osorio before his arrest that could be construed as an assertion of the right to a speedy trial. *See Barker*, 407 U.S. at 534, 92 S. Ct. at 2194 (noting that "the record shows no action whatever taken between October 21, 1958, and February 12, 1962, that could be construed as the assertion of the speedy trial right"). Given the unrebutted presumption that Osorio received the summons and complaint by

11

mail notifying him of the charges, the lack of any evidence that he did not know of the charges, and his failure to assert the right to a speedy trial until 23 months after he was notified of the charges, the third *Barker* factor weighs heavily against Osorio.

*Prejudice to Osorio Caused by the Delay*

We next consider the prejudice factor. "[U]nreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692 (quotation omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Osorio argues that he is prejudiced by the loss of audio recordings of certain phone calls and statements, which the district court described as "partially exculpatory." "Once triggered by arrest, indictment, or other official accusation, . . . the speedy trial enquiry must weigh the effect of delay on the accused's defense . . . ." *Id.* at 655, 112 S. Ct. at 2692. In considering prejudice to the defense, appellate courts consider prejudice that is "due to the delay." *Jones*, 392 N.W.2d at 235-36. Here, it is unknown when the audio recordings were lost. Because the record does not establish that the recordings were lost *after* Osorio was charged, it cannot be said that they were lost due to the postaccusation

delay. The lost recordings therefore do not establish prejudice for the purpose of our speedy-trial analysis.[2]

Osorio also argues that he suffered presumptive prejudice. "[A] defendant does not have to prove specific prejudice." *Griffin*, 760 N.W.2d at 341. "Where the government has been negligent, . . . prejudice can be presumed if there has been an excessive delay." *Erenas-Luna*, 560 F.3d at 779. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or . . . identify." *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693.

However, the presumption of prejudice may be extenuated by a defendant's acquiescence to the delay. *See id.* at 658, 112 S. Ct. at 2694 (stating that "when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief" (citation and footnotes omitted)). In this case, Osorio has not refuted the presumption that he knew of the charges, and he apparently was content to allow significant time to pass without a trial, while incurring the attendant risk of prejudice to his defense. Because Osorio acquiesced in the postaccusation delay by failing to demand a speedy trial at any point before his arrest, we conclude that the final *Barker* factor does not compel relief.

---

[2] The lost evidence may be the basis for other claims for relief. For example, Osorio cites *State v. Jenkins*, in which the Minnesota Supreme Court stated that "[a] defendant's right to due process of law is implicated when the State loses, destroys, or otherwise fails to preserve material evidence." 782 N.W.2d 211, 235 (Minn. 2010). But any such claim is distinct from Osorio's speedy-trial claim.

13

*Conclusion*

To summarize, the length of the postaccusation delay, 21 months, is sufficient to trigger a speedy-trial analysis. Although the state is responsible for the delay, we do not weigh the reason for the delay heavily against the state because the state's failure to apprehend Osorio is the result of negligence and not bad faith. Because Osorio presumptively received the summons and complaint describing the charges and there is no evidence that he did not know of the charges, his 23-month failure to assert the right to a speedy trial weighs heavily against him. As to prejudice, the record does not show actual prejudice resulting from postaccusation delay, and any presumptive prejudice is mitigated by Osorio's acquiescence in the delay. We consider these circumstances "together with such other circumstances as may be relevant," *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. One such circumstance is the seriousness of the alleged offense. *Sistrunk*, 429 N.W.2d at 282. Osorio is charged with two counts of first-degree criminal sexual conduct against two children under the age of 13. Obviously, the alleged offenses are very serious.

In balancing the circumstances of this case, we are influenced by the Supreme Court's reasoning and holding in *Barker* that, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied [the] constitutional right [to a speedy trial] on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial. We hold, therefore, that Barker was not deprived of his due process right to a speedy trial." *Barker*, 407 U.S. at 536, 92 S. Ct. at 2195. Although the circumstances in *Barker* differ because Barker failed to assert his right to a speedy trial

14

over the course of several years of court proceedings, *id.* at 534-35, 92 S. Ct. at 2194, Osorio's 23-month knowing failure to assert his right to a speedy trial is sufficiently analogous to show that Osorio did not want a speedy trial. We hold that on balance, Osorio was not deprived of his constitutional right to a speedy trial.

We do not condone the state's inaction and resulting prolonged failure to obtain custody of Osorio and bring him before the district court after charging him with two counts of first-degree criminal sexual conduct. But the resulting 21-month delay is not significant enough to tip the balance in Osorio's favor when Osorio presumptively knew of the charges and did not assert his right to a speedy trial until after his arrest. We do not suggest that the state's negligent failure to arrest an accused cannot, under other circumstances, justify a dismissal on speedy-trial grounds when the accused knows of the charges and fails to assert his right to a speedy trial. But the particular circumstances of this case do not establish a violation of Osorio's constitutional right to a speedy trial.

## D E C I S I O N

Based on our de novo review of Osorio's speedy-trial challenge, we conclude that the district court clearly erred by ruling that Osorio's constitutional right to a speedy trial was violated. We therefore reverse the district court's pretrial order dismissing the charges and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**

15