*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2209**

State of Minnesota,
Respondent,

vs.

Kevin Charles Owens,
Appellant.

**Filed January 19, 2016
Reversed and remanded
Larkin, Judge**

St. Louis County District Court
File No. 69DU-CR-10-3134

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Scott M. Flaherty, Special Assistant Public Defender, Emily Scholtes (certified student attorney), Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Larkin, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

A jury found appellant guilty of theft of lost property. Appellant challenges his conviction, arguing that his right to a speedy trial was violated, his trial counsel was ineffective, and the district court's jury instructions were erroneous. We hold that appellant's constitutional right to a speedy trial was not violated. But because the district court's omission of an element of the offense from the jury instructions constitutes plain error affecting appellant's substantial rights, we reverse and remand for a new trial, without addressing appellant's ineffective-assistance-of-counsel claim.

## FACTS

On September 21, 2010, respondent State of Minnesota charged appellant Kevin Charles Owens with theft of lost property, failure to pay over state funds, failure to pay income tax, and failure to file a tax return. The complaint alleged that Owens owned Owens Yacht Sales Inc. in Duluth, and that on March 18, 2008, the Minnesota Department of Revenue (MDOR) erroneously issued two checks made payable to Owens Yacht Sales Inc. in the amounts of $560,980.12 and $221,982.06. The complaint alleged that MDOR notified Owens that the payment was a mistake and that the checks were inadvertently issued when MDOR personnel were reviewing and attempting to correct old taxpayer account ledger systems. The complaint further alleged that MDOR repeatedly requested that Owens return the money, Owens refused to do so, and Owens spent the entire $782,962.18 within several months.

The district court mailed a summons and complaint to Owens. The summons instructed Owens to appear on November 2, 2010, in district court to answer the complaint. Owens failed to appear, and the district court issued a warrant for his arrest. Owens appeared before the district court in custody on May 29, 2012. The district court set bail in the amount of $200,000 and scheduled an omnibus hearing. At the July 6 omnibus hearing, Owens's attorney demanded a speedy trial on Owens's behalf but noted that the defense had requested more discovery and that it might not be provided in time for a trial within 60 days.[1] The district court set an August 13 pretrial date and August 28 trial date.

On August 9, the state moved for a continuance because the prosecutor would be "absolutely unavailable" the week of August 28. Owens agreed to withdraw his speedy-trial demand if he could be released from custody. The district court agreed to release Owens, authorized him to live in Hennepin County, and placed him on supervised release subject to conditions that he report to probation weekly by phone, not use mood altering substances without a prescription, not drive without a valid license, submit to warrantless searches, not possess firearms, and remain out of bars and liquor stores. The district court scheduled a pretrial conference for January 14, 2013, and a trial for January 29. On January 14, one of Owens's attorneys informed the district court that neither she nor her co-counsel was available on the Wednesday of the trial week. She requested that trial be held on Tuesday, Thursday, and Friday. Because the judge was available on only Tuesday and Wednesday of that week, the parties agreed to continue the trial to May 21.

---

[1] Minn. R. Crim. P. 11.09(b) provides: "On demand of any party the trial must start within 60 days of the demand unless the court finds good cause for a later trial date."

3

On May 21, the state moved to amend the complaint to add a charge of theft with indifference to the rights of the owner. The district court granted the state's motion. One of Owens's attorneys notified the court that his co-counsel was no longer assigned to the case and that he would be representing Owens alone. That attorney requested an omnibus hearing to challenge probable cause. The district court set an omnibus hearing for June 7. On June 7, Owens's attorney requested two weeks to brief his probable-cause argument. The district court set a June 28 deadline for Owens's brief and a July 19 deadline for the state's response. In August, the district court dismissed the charge of failure to pay over state funds and scheduled the remaining charges for a trial on December 10.

On December 10, the district court announced that Owens's case was scheduled for a "backup jury trial" and that there was "a trial or two ahead of it." Owens's attorney stated that Owens was not aware until that morning that he could reassert a speedy-trial demand. Owens's attorney asked to set the trial in April and stated that he would discuss with Owens, in the "next day or two," whether to reassert a speedy-trial demand and request a different trial date. Owens's attorney noted that Owens "has a right to have his matter resolved in an efficient fashion, and it's been hanging out a while," and that Owens "would like to get the matter over with," but that "we know there are cases ahead of us." The district court stated that it would "accommodate, should a speedy trial demand be made, such a request" and hold a trial within 60 days. The district court set a trial date of April 22, 2014. For reasons not clear from the record, Owens's case was not tried on April 22.

4

Owens's trial began on August 12. Only the theft-of-lost-property charge was submitted to the jury. The other charges were dismissed. The jury found Owens guilty, and the district court placed him on probation. This appeal follows.

**D E C I S I O N**

**I.**

Owens contends that he was denied his constitutional right to a speedy trial. The United States and Minnesota Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. "A speedy-trial challenge presents a constitutional question subject to de novo review." *State v. Griffin*, 760 N.W.2d 336, 339 (Minn. App. 2009).

In determining whether a defendant's right to a speedy trial has been violated, Minnesota courts apply the four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). *State v. Widell*, 258 N.W.2d 795, 796 (Minn. 1977). The four factors are: "(1) the length of the delay; (2) the reason for the delay; (3) whether and when the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay." *State v. Cham*, 680 N.W.2d 121, 124 (Minn. App. 2004), *review denied* (Minn. July 20, 2004). "None of the factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (quotation omitted). A speedy-trial determination involves a "difficult and sensitive balancing process." *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. We consider each *Barker* factor in our de novo analysis.

5

*Length of the Delay*

"The length of the delay is a 'triggering mechanism' which determines whether further review is necessary." *Windish*, 590 N.W.2d at 315 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2182). "Where the length of the delay is 'presumptively prejudicial' there is a necessity for inquiry into the remaining factors of the test." *Id.* (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2182). The Minnesota Supreme Court has concluded that a six-month delay "is sufficient to trigger further inquiry." *State v. Corarito*, 268 N.W.2d 79, 80 (Minn. 1978).

"The delay in speedy-trial cases is calculated from the point at which the sixth amendment right attaches." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009) (quotation omitted). In this case, the state charged Owens on September 21, 2010, and trial commenced on August 12, 2014. The nearly four-year delay in this case is sufficient to establish presumptive prejudice and trigger further inquiry.

*Reason for the Delay*

The second *Barker* factor is the reason for the delay, "including whether it is attributable to [the defendant] or the state." *State v. Sistrunk*, 429 N.W.2d 280, 282 (Minn. App. 1988), *review denied* (Minn. Nov. 23, 1988). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered

6

since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

Owens asserts that after his arrest, "over [20] months of [a 25-]month delay were due to the state's delays or an overburdened judicial system." The record does not support Owens's assertion. The state moved to continue the August 28, 2012, trial date. Owens agreed to the continuance if he could be released from custody, and he was released. Both parties agreed to continue the January 29, 2013, trial date because Owens's attorneys and the district court were not available on the same days that week. The May 21 trial date was continued because Owens requested an omnibus hearing to challenge probable cause. At the omnibus hearing, Owens requested more time to brief his probable-cause challenge. On December 10, Owens requested an April 2014 trial date after learning there were one or two trials set ahead of him. The record does not explain why the April trial date was continued. Because most of the delays are attributable to Owens, this factor weighs against him. *See State v. Johnson*, 498 N.W.2d 10, 16 (Minn. 1993) (holding that "the defendant's claim fails under the [second] of the *Barker* considerations . . . principally because his own motions were the primary reason for much of the delay"); *State v. Hahn*, 799 N.W.2d 25, 31-32 (Minn. App. 2011) (concluding that the second *Barker* factor weighed against the defendant because of his motions and "various requests for continuances and postponements"), *review denied* (Minn. Aug. 24, 2011).

*Whether and When Owens Asserted His Right to a Speedy Trial*

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."

7

*Barker*, 407 U.S. at 531-32, 92 S. Ct. at 2192-93. The frequency and force of the assertion may be weighed when assessing this factor. *Id*. at 529, 92 S. Ct. at 2191.

Owens demanded a speedy trial on July 6, 2012, but withdrew his demand on August 9. He did not expressly reassert his speedy-trial demand. Owens argues that a speedy-trial demand need not be technical or formal and that he effectively reasserted his demand on December 10, 2013, when his attorney stated that Owens "was prepared to proceed" and "would like to get the matter over with." *See Windish*, 590 N.W.2d at 317 (stating that "[a]ssertion of the right to a speedy trial need not be formal or technical" and instead can be "any action whatever that could be construed as the assertion of the speedy trial right"). Although Owens's attorney commented regarding Owens's desire to resolve the matter, he also told the district court that Owens had not yet decided whether to reassert his speedy-trial demand. Counsel also informed the district court that he would discuss reasserting the right to a speedy trial with Owens in the "next day or two." Owens never raised the issue again. Given the circumstances, Owens's attorney's statements are not reasonably construed as an assertion of Owens's right to a speedy trial. Thus, the third *Barker* factor weighs against Owens.

*Prejudice to Owens Caused by the Delay*

"[U]nreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692 (1992) (quotations omitted). "Of these forms of prejudice,

8

the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Owens argues that his supervised release was tantamount to oppressive pretrial incarceration. In *Griffin*, this court concluded that supervised release was prejudicial where the defendant was not "at liberty to pursue ordinary life activities or even return to her home in Chicago during the first six months of the delay" and "for much of that time [the defendant's] freedom was severely restricted by . . . standby-status requirements imposed on her by the district court as the case was alternately placed on-call and continued some 30 times." 760 N.W.2d at 341. Owens's conditions of release were not nearly as restrictive as the conditions in *Griffin*. Owens was allowed to return to his home in Hennepin County and to check in with the probation department by phone. The district court also allowed Owens to travel out of state with the permission of the probation department. Owens asserts that the delay "caused extreme amounts of anxiety and concern [to him] and his family and friends." But Owens points to nothing in the record to support this assertion.

Owens also argues that he suffered presumptive prejudice as a result of the delay. "[A] defendant does not have to prove specific prejudice." *Id.* "Where the government has been negligent . . . prejudice can be presumed if there has been an excessive delay." *Erenas-Luna*, 560 F.3d at 779. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or . . . identify." *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693. But the presumption of prejudice may be extenuated by a defendant's acquiescence to the delay. *See id.* at 658, 112 S. Ct. at 2694 (citation omitted) (stating that "when the presumption of prejudice, albeit unspecified, is neither extenuated,

9

as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief" (footnotes omitted)). Owens acquiesced to the delay through his requests for continuances and his failure to reassert his right to a speedy trial after he withdrew his speedy-trial demand. This factor therefore weighs against Owens.

In sum, although the nearly four-year delay in this case triggers review, the remaining *Barker* factors weigh against Owens. On balance, Owens's right to a speedy trial was not violated.

## II.

Owens also contends that the district court improperly instructed the jury regarding the elements of theft of lost property. In discussing the jury instructions with the parties, the district court stated that it did not "see the—this, specifically, as a lost property case in terms of the—checks being, quote unquote, 'lost,'" and that it "made an executive decision to alter the caption slightly so that it fits this case." The district court instructed the jury using a modified version of 10 *Minnesota Practice*, CRIMJIG 16.11-.12 (2006), as follows:

> The statutes of Minnesota provide that whoever *acquires another's property* and knowing, or having reasonable means of ascertaining the true owner, appropriates that property to his own use, without first having made a reasonable effort to return the property to the owner, is guilty of a crime.
>
> . . . The elements of theft are: First, the defendant appropriated checks, which were the property of the Minnesota Department of Revenue.
>
> Second, the defendant knew or believed that the checks were the property of the Minnesota Department of Revenue.
>
> Third, the defendant knew the identity of the owner.

10

> Fourth, defendant failed to make reasonable efforts to return the checks to the owner.
>
> Fifth, the defendant's act took place on or about March 18, 2008, in St. Louis County.

(Emphasis added).

Owens argues that the instruction omitted the "lost property" element of the charged offense. The state contends that this issue is not preserved for appeal because Owens did not object to the substance of the district court's jury instructions. When the district court stated that it had made an "executive decision to alter the caption slightly so that it fits this case," Owens objected, but he noted that it was "not a strong objection." And when the district court asked if Owens objected to the substance of the proposed instructions regarding the definition and elements of the offense, Owens responded "No."

"[A] defendant who has objected to the substance of a jury instruction at trial has preserved his right to seek a review of the instruction on appeal." *State v. Porter*, 674 N.W.2d 424, 428 (Minn. App. 2004). And "[i]f a defendant's trial objection embodies the arguments raised on appeal, the claim has been properly preserved, even if the defendant did not clearly articulate his objection to the instruction at trial." *Id.* But "the failure to object to jury instructions or to propose specific instructions constitutes a waiver of the issue on appeal." *State v. Hollins*, 765 N.W.2d 125, 128 (Minn. App. 2009). Nonetheless, "a failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law." *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998). Given Owens's failure to object to the specific instructions and failure to propose an alternative instruction, we review the instruction for plain error.

11

Under the plain-error test, this court will not grant relief unless (1) there is an error, (2) the error is plain, and (3) the error affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If the first three requirements of the plain-error test are satisfied, appellate courts then consider whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted).

Appellate courts review jury instructions in their entirety to determine whether they fairly and adequately explained the applicable law. *State v. Kuhnau*, 622 N.W.2d 552, 555-56 (Minn. 2001). "An instruction is in error if it materially misstates the law. Furthermore, it is well settled that the court's instructions must define the crime charged." *Id.* at 556 (citation omitted). In defining the crime charged, the district court should explain the elements of the offense. *Id.*

The applicable theft statute defines 17 specific acts constituting theft, many of which are based on a precise type of property.[2] Minn. Stat. § 609.52, subd. 2 (2006). For example, the statute separately defines theft of lost property, property or services from vending machines, trade secrets, cable-television service, telecommunications service, and motor vehicles. *Id.*, subd. 2(6), (7), (8), (12), (14), (17). The state charged Owens with theft of lost property under Minn. Stat. § 609.52, subd. 2(6), which provides that a person

---

[2] The legislature amended the theft statute in 2012, adding an 18th act of theft as follows: "intentionally, and without claim of right, takes motor fuel from a retailer without the retailer's consent and with intent to deprive the retailer permanently of possession of the fuel by driving a motor vehicle from the premises of the retailer without having paid for the fuel dispensed into the vehicle." 2012 Minn. Laws ch. 173, § 6, at 158.

commits a theft if the person "finds *lost property* and, knowing or having reasonable means of ascertaining the true owner, appropriates it to the finder's own use or to that of another not entitled thereto without first having made reasonable effort to find the owner and offer and surrender the property to the owner." (Emphasis added.)

Section 609.52 does not define lost property. "In discerning the plain and ordinary meaning of a word or phrase . . . [appellate courts] consider the common dictionary definition of the word or phrase." *State v. Brown*, 792 N.W.2d 815, 822 (Minn. 2011). *Black's Law Dictionary* defines lost property in two ways. It defines the term "lost" in reference to property as "beyond the possession and custody of its owner and not locatable by diligent search." *Black's Law Dictionary* 1031 (9th ed. 2009). It also specifically defines "lost property" as "[p]roperty that the owner no longer possesses because of accident, negligence, or carelessness, and that cannot be located by an ordinary, diligent search." *Black's Law Dictionary* 1336 (9th ed. 2009).

Given the particularity with which the legislature has defined various acts of theft and its decision to define several acts based on specific types of property, we have no difficulty concluding that "lost property" is an element of the charged offense. Yet, the district court did not instruct the jury that it had to determine whether the checks in this case were lost property. Nor did the district court define lost property. In fact, the district court did not do so because it questioned whether the checks actually were lost property.

The state argues that the district court's instruction was nonetheless accurate because

13

> [a]lthough the court did not use the term "lost property," this slight modification did not alter the definition of the crime. The only reasonable interpretation of the statute is that the legislature used the term "lost property" to distinguish this offense—which criminalizes a defendant's conduct after passively acquiring another's property—from other subdivisions of the statute—which criminalize the intentional act of seeking out property to steal. Thus, for all practical purposes, "find[ing] lost property" and "acquir[ing] another's property" have the same meaning under this statute—what matters is what the defendant did with another's property *after* he acquired it.

We disagree with the state's argument for several reasons. First, if legislative intent is clear from a statute's plain and unambiguous language, courts interpret the statute according to its plain meaning. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). We do not discern, and the state does not identify, any ambiguity in section 609.52, subdivision 2(6), that justifies interpreting the statute according to anything other than its plain meaning. And the plain language of section 609.52, subdivision 2(6), does not merely require appropriation of "another's property" as the district court instructed the jury, it requires appropriation of *lost* property. Because the district court's instruction did not inform the jury of the lost-property element, it did not adequately explain the applicable law or the elements of the charged offense.

The state also argues that "the district court outlined the elements of the crime exactly as proposed by CRIMJIG 16.12." On one hand, the model instruction for theft of lost property recognizes that the offense is based on appropriation of lost property. The definitional instruction provides that

> whoever finds *lost property*, and knowing or having reasonable means of ascertaining the true owner, appropriates the *lost*

14

*property* to (his) (her) own use (or that of another) without first having made a reasonable effort to find the owner and return the property to the owner, is guilty of a crime.

CRIMJIG 16.11 (emphasis added). That instruction generally tracks the language of the theft-of-lost-property statute. *Compare* CRIMJIG 16.11, *with* Minn. Stat. § 609.52, subd. 2(6).

On the other hand, CRIMJIG 16.12, which describes the elements of theft of lost property, does not include appropriation of lost property among the elements. CRIMJIG 16.12. Given the detailed statutory scheme that the legislature has used to define the acts constituting theft, it is concerning that CRIMJIG 16.12 entirely ignores the requirement under section 609.52, subdivision 2(6), that the appropriated property be lost property. We once again remind the district court that the "CRIMJIGs are not precedential or binding" and "[w]hen the plain language of the statute conflicts with the CRIMJIG, the district court is expected to depart from the CRIMJIG and properly instruct the jury regarding the elements of the crime." *State v. Gunderson*, 812 N.W.2d 156, 162 (Minn. App. 2012) (quotation omitted). Because CRIMJIG 16.12 does not include the clear statutory requirement that the appropriated property be lost property, it does not accurately describe the elements of the charged offense, and the district court should not have used that instruction.

Lastly, the state suggests that the checks were lost property as a matter of law. The state relies on *Manos v. First Bank Minnehaha*, 357 N.W.2d 372 (Minn. App. 1984). In *Manos*, an employee appealed the Commissioner of Economic Security's decision that she was not eligible to receive unemployment-compensation benefits due to gross misconduct,

15

which the commissioner found that she committed when she failed to report that her employer overpaid her $739.57 over a two-month period. 357 N.W.2d at 373-74. On appeal, the employee argued that "there is no evidence that she intended to commit theft so she should not be disqualified for gross misconduct." *Id*. at 375. This court concluded that "[e]vidence in the record supports the finding that [the employee] was aware of the overpayments," and therefore "her failure to report them could fall within the theft statute and thus can be considered gross misconduct." *Id*. at 376.

But this court did not conclude that the overpayment was "lost property" under the criminal theft statute. Although we cited section 609.52, subdivision 2(6), we also cited subdivision 2(1) and italicized the statutory language stating that theft is committed when a person intentionally and without claim of right "'*retains possession of movable property of another without his consent*.'" *Id*. at 375 (quoting Minn. Stat. § 609.52, subd. 2(1) (1982)). This court did not specify whether the employee had violated subdivision 2(6) or 2(1); it merely stated that the employee's failure to report the overpayment "could fall within the theft statute." *Id*. at 376. We therefore do not consider *Manos* dispositive.

In sum, the state's arguments do not persuade us that the district court's jury instruction accurately defined the specific act of theft that was submitted to the jury. The district court's omission of the lost-property element of the offense from the jury instructions was error. *See State v. Carlson*, 268 N.W.2d 553, 560 (Minn. 1978) (stating that the defendant "is entitled to have all the elements of the offense with which he is charged submitted [to the jury] even if the evidence relating to these elements is uncontradicted"). We next consider whether the error was plain.

16

An error is "plain" if it is clear or obvious. *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation omitted). An error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Because caselaw requires the district court to accurately define the crime charged in its jury instructions, the error is plain. *See State v. Vance*, 734 N.W.2d 650, 658-59 (Minn. 2007) (stating that "jury instructions must include all elements of the offense" and that failure to instruct the jury on an element of an offense is error that is plain), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). We therefore consider whether the error affected Owens's substantial rights. *See Griller*, 583 N.W.2d at 740.

"An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *State v. Watkins*, 840 N.W.2d 21, 28 (Minn. 2013) (citation and quotation omitted).

> [T]he omission of an element of a crime in a jury instruction does not automatically require a new trial. Instead, the reviewing court must conduct a thorough examination of the record to determine whether the omission of an element of a charged offense from the jury instruction was sufficiently prejudicial in light of the standard of review. The reviewing court may consider, among other factors, whether: (1) the defendant contested the omitted element and submitted evidence to support a contrary finding, (2) the State submitted overwhelming evidence to prove that element, and (3) the jury's verdict nonetheless encompassed a finding on that element.

*Id.* at 28-29.

Our review of the record reveals that the state did not submit overwhelming evidence to prove that the checks were lost. In fact, one of the state's witnesses testified that MDOR's computer system kept a record of the "history of refunds that were sent on [Owens's] account," including the two checks that MDOR erroneously sent to Owens. Moreover, the jury's verdict did not encompass a finding on the lost-property element. Given the evidence presented at trial, a properly instructed jury could have found that the checks were not lost and that Owens therefore did not appropriate lost property as charged. We therefore conclude that the instructional error affected Owen's substantial rights.

Lastly, we consider "whether a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings." *Id*. at 31. The district court's erroneous instruction prevented the jury from considering a necessary element of the charged offense when rendering its verdict. Whether Owens's actions constitute theft of lost property must be determined by a properly instructed jury. Based on the specific facts of this case, we conclude that allowing the jury to consider whether Owens's actions constitute the crime charged—as defined by the legislature—will protect the fairness, integrity, and public reputation of judicial proceedings. We therefore reverse and remand for a new trial consistent with this opinion.

Because we reverse and remand for a new trial based on the district court's erroneous jury instructions, we do not consider Owens's ineffective-assistance-of-counsel claim.

**Reversed and remanded.**

18