**STATE of Minnesota, Respondent,**

v.

**David Ernest OSORIO, Appellant.**

A15-0921

Supreme Court of Minnesota.

Filed: March 22, 2017

---

622

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Mary F. Moriarty, Chief Hennepin County Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota, for appellant.

## OPINION

ANDERSON, Justice.

We are presented here with a 21-month delay between the date appellant David Osorio was charged with a crime and his

eventual arrest and are asked to decide whether that delay violated his Sixth Amendment right to a speedy trial. The Hennepin County Attorney's office charged Osorio in May 2013 with two counts of first-degree criminal sexual conduct. The district court mailed the complaint and summons to Osorio's last known address in Perris, California. The summons directed Osorio to make his first appearance in Hennepin County district court in June 2013. When Osorio failed to appear for the hearing, the district court issued a warrant for his arrest. California police officers arrested Osorio in February 2015 for unrelated reasons and he was extradited to Minnesota.

Before his omnibus hearing, Osorio moved to dismiss the charges, claiming that the delay violated his right to a speedy trial under the United States and Minnesota Constitutions. The district court granted Osorio's motion and dismissed the charges. The court of appeals reversed in a published opinion and Osorio petitioned our court for review. On appeal, we affirm the decision of the court of appeals as modified.

## I.

In early March 2007, the Mound Police Department received a report from Osorio's then-wife, N.O., alleging that Osorio had sexually assaulted his minor stepdaughter. On March 12, Mound Police Detective Dan Niccum interviewed Osorio, who was serving time at the Hennepin County Adult Corrections Facility for a domestic-assault conviction. A few days later Detective Niccum submitted the case to the Hennepin County Attorney's Office for charging, but no charges were filed.

Shortly after his release from the Hennepin County Adult Corrections Facility in mid-March, Osorio moved to California. N.O. followed up with the Mound Police Department in November, when she called to report that Osorio was living with his mother in Perris, California—a city in Riverside County. N.O. also provided new evidence in the case. Another Mound Police Department officer, Detective Wittke, contacted the Riverside County Sheriff's Department to request assistance with the investigation. Riverside authorities confirmed that Osorio was residing with his mother in California and provided Osorio's Perris address.

On November 28, Osorio called the Mound Police Department and spoke with Detective Wittke. Osorio explained that he had heard there was a warrant for his arrest in Minnesota, but Detective Wittke told him that no warrant had been issued. Osorio also provided his contact information to Detective Wittke at that time. In January 2008, Detective Wittke resubmitted the case to the Hennepin County Attorney's Office for charging. Again, no charges were filed.

Over 4 years later, in September 2012, N.O. left a voicemail for Detective Wittke. N.O. reported that another one of her minor daughters had alleged that Osorio sexually assaulted her. Detective Wittke continued his investigation and spoke with a sergeant from the Riverside County Sheriff's Department in early October. The sergeant confirmed that his department had been in contact with Osorio at the Perris, California address. In November, Detective Wittke asked Riverside authorities to interview Osorio. When he was contacted by the Riverside authorities, Osorio said that he thought he was found "not guilty" of the prior allegations and declined to be interviewed. Shortly thereafter, on November 11, Osorio left a voicemail message for Detective Wittke in which he stated that he had been approached by a Riverside County Sheriff and that he thought he had been found not

guilty. Osorio asked that Detective Wittke call him.

In late November, N.O. and Detective Wittke each called Osorio. When N.O. called Osorio on November 21 at Detective Wittke's request, Osorio answered, stated that nothing had happened, and hung up. When Detective Wittke called Osorio on November 27, Osorio explained that he spoke with some lawyers who told him that the statute of limitations had run. Osorio declined to speak to Detective Wittke further. Sometime thereafter, Detective Wittke resubmitted the case to the Hennepin County Attorney's Office for charging.

On May 1, 2013, the State charged Osorio with two counts of first-degree criminal sexual conduct based on allegations that Osorio sexually abused his two minor stepdaughters. Later that month, the district court sent the summons and complaint by U.S. mail to Osorio's last known address in Perris, California. The summons explained the charges against Osorio and directed him to make his first appearance in Hennepin County district court in early June. The district court did not make an entry in the court records indicating that the summons and complaint were returned as undeliverable.

On June 6, 2013, the district court issued a warrant for Osorio's arrest after he failed to appear at the hearing. The warrant information was entered into the National Crime Information Center (NCIC) database for law-enforcement agencies.[1] *See United States v. Erenas-Luna*, 560 F.3d 772, 775 n.2 (8th Cir. 2009) ("The NCIC database is an FBI-controlled national database that contains information

for recent and outstanding arrest warrants. Both federal and state law-enforcement officers ... can access the system to determine whether a person has outstanding arrest warrants."). The State concedes, however, that "[t]here is no additional evidence of efforts made by law enforcement to locate Osorio."

On February 4, 2015, about 21 months after the arrest warrant was issued, law enforcement officials from the Riverside County Sheriff's Department in California arrested Osorio on unrelated charges. Osorio was extradited to Minnesota and made his first appearance in Hennepin County district court on March 2, 2015. At that time, Osorio provided his Perris, California address as his current residence. Osorio consistently provided this same address to court officials. Osorio even submitted a letter from the Riverside County Department of Public Social Services, indicating that he had received food stamps at the Perris, California address from October 11, 2013 through April 2, 2015. Osorio's bail evaluation reflected that Osorio had lived at the Perris, California address for 9 years.

On April 3, 2015, Osorio moved to dismiss the charges based on an alleged violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 6 of the Minnesota Constitution. At his omnibus hearing on April 8, Osorio demanded a speedy trial. One month later, the State informed Osorio that certain evidence from the investigation no longer existed, including audio recordings of phone calls and statements made by Osorio and N.O.[2]

---

1. At that time, according to the State, Osorio's whereabouts were "considered unknown." The Hennepin County Sheriff's Office, however, believed that Osorio's last known address was in California.

2. The missing items were: (1) an audio recording of Osorio's statement to law enforcement on March 12, 2007; (2) an audio recording of a phone conversation between Osorio and Detective Wittke on November 28, 2007; (3) an audio recording of Detective Wittke's

The district court concluded that the State had violated Osorio's right to a speedy trial and dismissed the charges against him. The court applied the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and determined that none of the factors weighed in favor of the State. Specifically, the court found that the delay was primarily attributable to the State's negligence in failing to execute the warrant for Osorio's arrest. The court rejected the argument that Osorio should have asserted his speedy trial right sooner because the State could not "definitively prove that [Osorio] knew about the complaint prior to his arrest" and Osorio was not required to "bring himself to court." Finally, the court concluded that the fourth *Barker* factor—prejudice to the defendant as a result of the delay—was satisfied because Osorio's defense was impaired by the unavailability of the missing evidence.

The State moved the district court to reconsider its order dismissing the charges. The district court denied the State's motion. The State then appealed the district court's pretrial order dismissing the charges.

In a published decision, the court of appeals reversed the district court's pretrial order and remanded the case for further proceedings consistent with its opinion. *State v. Osorio*, 872 N.W.2d 547, 558 (Minn. App. 2015). The court of appeals concluded that the third and fourth *Barker* factors did not weigh in Osorio's favor, and therefore, on balance, the State had not

violated Osorio's constitutional right to a speedy trial. *Id.* at 554-58. As to the third factor, the court determined that Osorio knew of the charges long before his arrest and yet failed to make a speedy-trial demand until after his arrest. In reaching this conclusion, the court applied "a 'presumption, in the absence of proof to the contrary, that mail properly addressed and sent with postage prepaid is duly received by the addressee.'" *Id.* at 555 (quoting *Nafstad v. Merchant*, 303 Minn. 569, 570, 228 N.W.2d 548, 550 (1975)). The court of appeals also determined that Osorio was not prejudiced by the loss of the audio recordings: "Because the record does not establish that the recordings were lost *after* Osorio was charged, it cannot be said that they were lost due to the postaccusation delay." *Id.* at 556-57.

Osorio appealed to our court and we granted review. On appeal, Osorio argues that the court of appeals erred by presuming he had received the summons and claims that all four *Barker* factors weigh in his favor. The State, by contrast, argues that the court of appeals correctly applied the presumption in this context and claims that at least three of the four *Barker* factors weigh in its favor.

## II.

This case involves the appeal of a pretrial order—specifically, the district court's order granting Osorio's motion to dismiss for a violation of his right to a speedy trial. To appeal a pretrial order, the State must show "how the district

---

interview with N.O. on March 8, 2007; (4) an audio recording of Osorio's voicemail message to Detective Wittke on November 14, 2012 (this appears to be the November 11 voicemail, which Detective Wittke heard on the 14th); (5) an audio recording of N.O.'s phone call to Osorio on November 21, 2012; and (6) an audio recording of a phone conver-

sation between Osorio and Detective Wittke on November 27, 2012. The State was able to produce transcripts for all of these recordings, except for the November 14, 2012 voicemail message (item 4). It is unclear whether Osorio's voicemail message was ever saved or transcribed.

court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn. R. Crim. P. 28.04, subd. 2(2)(b). We view "critical impact" as a "threshold issue" and will not review a pretrial order absent such a showing. *State v. McLeod*, 705 N.W.2d 776, 784 (Minn. 2005). Osorio concedes that there is a critical impact and that the district court's order is therefore appealable. *See State v. Varnado*, 582 N.W.2d 886, 889 n.1 (Minn. 1998) (explaining that the State satisfied the critical impact test because the district court dismissed the complaint). Therefore, we now address the merits of the appeal: whether the district court's pretrial ruling dismissing the State's case against Osorio on speedy trial grounds was erroneous. *See State v. Lugo*, 887 N.W.2d 476, 481-87 (Minn. 2016) (holding that once the State demonstrates a critical impact, the court can proceed to the merits).

### III.

■ Both the United States Constitution and Minnesota Constitution guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6; *see also State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005). Whether a defendant has been denied a speedy trial is a constitutional question subject to de novo review. *See State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015). If a defendant has been deprived of his or her right to a speedy trial, "the only possible remedy" is dismissal of the case. *Strunk v. United States*, 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (quoting *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

Because the right to a speedy trial attaches after a defendant is formally charged or arrested, whichever comes first, defendants raise speedy-trial claims at different times. *United States v. Mar-ion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ("So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."); *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). For example, defendants have brought speedy-trial claims when there is a delay between the time of arrest and the time of trial. *See, e.g., State v. Windish*, 590 N.W.2d 311, 313 (Minn. 1999).

This case, however, concerns an alleged speedy-trial violation resulting from the delay between charging the defendant and the defendant's arrest. The Supreme Court of the United States first recognized that this type of delay implicates the Sixth Amendment in *Doggett v. United States*, 505 U.S. 647, 648, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (holding that an approximately 8-year delay between the defendant's indictment and arrest violated his Sixth Amendment right to a speedy trial). Here, Osorio argues that the State violated his right to a speedy trial when it made an insufficient effort to place him in custody after formally charging him.

■ In order to determine whether a speedy-trial violation has occurred, we apply the four-factor balancing test set forth by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182. *Taylor*, 869 N.W.2d at 19; *State v. Widell*, 258 N.W.2d 795, 796 (Minn. 1977). Under the *Barker* test, we must consider: " '(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant.' " *Taylor*, 869 N.W.2d at 19 (quoting *Windish*, 590 N.W.2d at 315 (citing *Barker*, 407 U.S. at

530-33, 92 S.Ct. 2182)). None of the *Barker* factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. 2182. "In other words, we must 'engage in a difficult and sensitive balancing process,'" *Taylor*, 869 N.W.2d at 19(quoting *Barker*, 407 U.S. at 533, 92 S.Ct. 2182), "'in which the conduct of both the State and the defendant are weighed,'" *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009) (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182). We consider each factor in turn.

### A.

"The length of the delay is a 'triggering mechanism' which determines whether further review is necessary." *Windish*, 590 N.W.2d at 315 (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. 2182). The length of the delay "is calculated from the point at which the [S]ixth [A]mendment right attaches: when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge." *Jones*, 392 N.W.2d at 235 (citing *Marion*, 404 U.S. at 320, 92 S.Ct. 455). "Where the length of the delay is 'presumptively prejudicial,' there is a necessity for inquiry into the remaining factors of the test." *Windish*, 590 N.W.2d at 315 (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. 2182). If the delay is presumptively prejudicial, we must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination" because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652, 112 S.Ct. 2686.

We have previously indicated that a 6-month delay is presumptively prejudicial, triggering an inquiry into the remaining *Barker* factors. *State v. Corarito*, 268 N.W.2d 79, 80 (Minn. 1978); *see also Doggett*, 505 U.S. at 652 n.1, 112 S.Ct. 2686 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.").

Here, the court of appeals concluded that the approximately 21-month delay between the date Osorio was charged in May 2013 and his arrest in February 2015 "establishes presumptive prejudice and triggers further inquiry." *Osorio*, 872 N.W.2d at 554. We agree, but that conclusion does not end our analysis.

### B.

Under the second prong of the *Barker* test, "the key question is 'whether the government or the criminal defendant is more to blame for th[e] delay.'" *Taylor*, 869 N.W.2d at 19 (quoting *Brillon*, 556 U.S. at 90, 129 S.Ct. 1283). Once we have determined which party is responsible for the delay, we must consider the specific reason for the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. We weigh various reasons differently. *Id.* For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* But "[a] more neutral reason such as negligence ... should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*; *see also Doggett*, 505 U.S. at 656-57, 112 S.Ct. 2686 ("Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground."). "'When the overall delay in bringing a case to trial is the result of

the defendant's actions,'" though, "'there is no speedy trial violation.'" *Taylor*, 869 N.W.2d at 20 (quoting *DeRosier*, 695 N.W.2d at 109).

 Here, the State argues that Osorio is responsible for the trial delay because he failed to respond to the summons mailed to his address. Even if Osorio received the summons, however, "[a] defendant has no duty to bring himself to trial." *Barker*, 407 U.S. at 527, 92 S.Ct. 2182. Thus, while Osorio may have had an obligation or responsibility to respond to the summons because it was a valid court order, he did not have a constitutional duty to bring himself to trial.

 The State, on the other hand, does have a responsibility to diligently pursue and prosecute the defendant. *See Doggett*, 505 U.S. at 652-53, 112 S.Ct. 2686. In this case, the State was clearly aware of Osorio's whereabouts and could have easily followed up on his location by contacting law enforcement officials in California. The State's complete failure to take any steps to execute the warrant against Osorio is the reason for the delay in this case.

Although the State is responsible for the delay, there is no evidence that the State's failure to execute the warrant was the product of any intentional plan to delay Osorio's trial or to hamper his defense. Rather, it seems the reason for the delay in this case was the State's negligence. As a result, although this factor weighs against the State, we weigh it "less heavily" than if the delay were intentional. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

### C.

 The third *Barker* factor is the defendant's assertion of the right to a speedy trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. "Whether and how a defendant asserts his right is closely related to the other factors...." *Id.* "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531-32, 92 S.Ct. 2182. But, in the context of a post-charge delay, when a defendant knows of the charges against him long before his arrest but fails to assert his right to a speedy trial until after his arrest, *Barker's* third factor weighs heavily against the defendant. *Doggett*, 505 U.S. at 653, 112 S.Ct. 2686. On the other hand, a defendant "is not to be taxed for invoking his speedy trial right only after his arrest" if he did not have knowledge of the charges against him prior to the arrest. *Id.* at 654, 112 S.Ct. 2686.

 When evaluating whether or not a criminal defendant was aware of the charges, courts generally analyze all of the relevant evidence in the record. For instance, in *Doggett*, the Supreme Court considered the fact that the defendant left the country shortly after he was indicted. Additionally, the Court considered the testimony of the defendant's wife and mother, both of whom testified that the defendant was unaware of the charges against him prior to his arrest. Finally, the government conceded that it had "'no information that Doggett was aware of the indictment before he left the United States ... or prior to his arrest.'" *Id.* After evaluating all of this record evidence, the Supreme Court concluded that Doggett was not aware of the charges against him prior to his arrest and, consequently, held that Doggett could not be blamed for failing to assert his right to a speedy trial prior to his arrest. *Id.* at 653-54, 112 S.Ct. 2686.

The United States Court of Appeals for the D.C. Circuit applied a similar analysis in *United States v. Tchibassa*, 452 F.3d 918 (D.C. Cir. 2006). Tchibassa violated federal law by taking a U.S. citizen hos-

tage in southern Africa in 1990. *Id.* at 921-22. The United States indicted Tchibassa on charges of hostage-taking in 1991, but he was not arrested until 2002. *Id.* at 922. Tchibassa moved to dismiss the charges against him, claiming that the more-than-10-year delay between his indictment and arrest violated his right to a speedy trial. *Id.* The district court denied the motion and the D.C. Circuit affirmed, concluding that the delay did not violate Tchibassa's speedy-trial right. *Id.*

Central to the D.C. Circuit's holding was its finding that Tchibassa had been aware of the charges against him since at least 1994, yet did not assert his right to a speedy trial until after his arrest. *Id.* at 926. Tchibassa contested this finding, asserting that he was not aware of the charges against him until after his arrest. *Id.* The D.C. Circuit weighed Tchibassa's statement against the other evidence in the record, including the transcript of an Interpol interview with Tchibassa that took place in 1994, and concluded that Tchibassa was aware of the charges no later than 1994. *Id.*

Using these cases as a guide, we weigh the totality of the evidence in the record to determine whether Osorio was aware of the charges against him prior to his arrest. In May 2013, the State served Osorio with the summons and complaint by mail under Rule 3 of the Minnesota Rules of Criminal Procedure. The State sent the summons and complaint via U.S. mail to Osorio's last known address in Perris, California. The summons and complaint were not returned as undeliverable. Osorio provided the Perris address as his address in court filings and admitted that he had received other official government mail at that address, including food stamps. Finally, Osorio never denied receiving the summons and offered no evidence indicating that he was unaware of the charges against him.

▇▇▇ Given the facts in this case—that the State served the summons and complaint by U.S. mail to a known address of the defendant, that the defendant admitted to receiving other official government mail at that address, and that the summons and complaint were not returned as undeliverable—it is reasonable to infer that the summons and complaint were properly delivered to Osorio.[3] Significantly, Osorio provided no evidence to the contrary. Indeed, Osorio does not even affirmatively state that he never received the summons and complaint. Nor did Osorio submit any evidence or testimony from other sources that would provide any indication that he was unaware of the charges against him.[4]

---

3. The court of appeals applied a presumption that Osorio received the summons and complaint because it was sent to his address by U.S. mail. *See Osorio*, 872 N.W.2d at 555 (citing *Nafstad*, 303 Minn. at 570, 228 N.W.2d at 550). We reject and overrule this portion of the court of appeals opinion. In the Sixth Amendment context, we decline to apply a presumption that all properly addressed mail is received in due course. Rather than relying on an unrelated civil doctrine, the mailbox rule, the court of appeals should have analyzed the totality of the evidence in the record to determine whether Osorio was aware of the charges against him.

4. We express no opinion about whether the result might be different in another case involving a denial by the defendant of any knowledge of the criminal charges. Here, the complete absence of such a statement—or any other affirmative evidence supporting the theory that Osorio was unaware of the charges against him—is telling. Unlike the Fifth Amendment right against self-incrimination, in which the defendant is under no obligation to explain himself, here the failure of the defendant to produce any evidence or a denial are circumstances a court may consider in analyzing the entire record to determine whether a Sixth Amendment speedy trial violation occurred.

In the absence of any evidence to the contrary, we conclude that it is more likely than not that Osorio was aware of the charges against him shortly after the State served the summons and complaint on him via U.S. mail in May 2013.[5] Osorio's failure to assert his right to a speedy trial—or to do anything directed toward initiating a speedy trial—for a period of nearly 2 years weighs heavily against him in this case. *See Doggett*, 505 U.S. at 653, 112 S.Ct. 2686.

### D.

■■■ The fourth and final prong of the *Barker* test is whether Osorio suffered prejudice as a result of the delay. *Windish*, 590 N.W.2d at 318 (citing *Barker*, 407 U.S. at 532, 92 S.Ct. 2182). "Once triggered by arrest, indictment, or other official accusation, ... the speedy trial enquiry must weigh the effect of delay on the accused's defense...." *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686. Three types of prejudice may result from an "unreasonable delay between formal accusation and trial": " 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by diminishing memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182); *accord Taylor*, 869 N.W.2d at 20. "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182); *Windish*, 590 N.W.2d at 318. Osorio claims this third and most serious type of prejudice.

The district court concluded that Osorio suffered actual prejudice as a result of the delay because of the loss of audio recordings, some of which contained partially exculpatory statements. The court of appeals disagreed. According to the court of appeals, "[b]ecause the record does not establish that the recordings were lost *after* Osorio was charged, it cannot be said that they were lost due to the postaccusation delay." *Osorio*, 872 N.W.2d at 556-57. Neither party disputes that the five recordings at issue are no longer available in audio form. The parties do contest, however, the point in time at which the recordings were lost.

We have previously stated that the prejudice a defendant suffers must be "due to the delay." *Jones*, 392 N.W.2d at 235; *see also Barker*, 407 U.S. at 532, 534, 92 S.Ct. 2182 (emphasizing that prejudice must be "owing to the delay"). The parties agree that any evidence lost before charging would not support Osorio's Sixth Amendment challenge.

■■■ The record does not establish that the recordings were lost after the State charged Osorio. In fact, the State submitted an affidavit indicating that, because the lost recordings were never inventoried, the recordings were already unavailable at the time of charging. The district court reached its conclusion that the lost recordings were prejudicial by including the pre-charge delay in its analysis: "[T]he cause of the missing or destroyed evidence is either the state's pre-charge delay and/or

**5.** The dissent argues that we fail to give deference to the district court's finding of fact that "the [S]tate has not proven that Defendant received notice of his first court appearance." It is worth noting that the district court labeled this statement a conclusion of law, not a finding of fact. In any event, the district court also found as facts that "during the period following the May 1, 2013 complaint and through at least February 2015, Defendant resided at [the Perris, California address]" and that there was no indication that the summons was returned as undeliverable.

other negligence by the state or law enforcement. Thus, [d]efendant has suffered actual prejudice, regardless of when the evidence went missing." But pre-charge delay is not relevant in a speedy-trial analysis because the right to a speedy trial does not attach until *after a formal indictment or an arrest. See Marion,* 404 U.S. at 313, 92 S.Ct. 455.

■ Because Osorio cannot demonstrate that the recordings were lost due to the delay between the time the State charged him and the time of his arrest, Osorio cannot establish actual prejudice.[6] That is not the end of the inquiry, however. The Supreme Court has generally recognized that

> excessive delay presumptively compromises the reliability of the trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria ... it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett,* 505 U.S. at 655-56, 112 S.Ct. 2686. Therefore, "consideration of prejudice is not limited to the specifically demonstrable, and ... affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.*

■ This presumptive prejudice, however, may be ameliorated by the defendant's acquiescence to the delay, or it may be persuasively rebutted by the State. *Id.* at 658, 112 S.Ct. 2686 ("[W]hen the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." (citation and footnotes omitted)). Although the State "has not, and probably could not have, affirmatively proved that the delay left [the defendant's] ability to defend himself unimpaired," *Doggett,* 505 U.S. at 658 n.4, 112 S.Ct. 2686, Osorio's acquiescence to the delay reduces the weight that we afford his claim of generalized prejudice. As a result, the prejudice factor does not provide significant support for Osorio's claim.

## IV.

We must now weigh all of the *Barker* factors together to determine whether the State violated Osorio's right to a speedy trial. The approximately 21-month delay between the time the State charged Osorio and the date of his arrest is presumptively prejudicial. The State's negligence caused the delay, which means that the cause of the delay weighs somewhat against the State. But Osorio failed to assert his right to a speedy trial even though the totality of the evidence indicated that he was

---

**6.** The dissent concludes that the State has failed to meet its burden to show that the evidence was not destroyed during the post-charge delay. But *Doggett* suggests the opposite. In *Doggett,* the defendant argued that he suffered actual prejudice because tape recordings of conversations between the defendant and law enforcement had been lost. *United States v. Doggett,* 906 F.2d 573, 581 (11th Cir. 1990), *rev'd,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), *vacated,* 972 F.2d 1258 (11th Cir. 1992). The Eleventh Circuit rejected Doggett's claim because there was no evidence that the recordings were destroyed

in bad faith and all of the individuals who appeared on tape were available to testify at trial. *Id.* The Supreme Court agreed that the State had "ably counter[ed]" Doggett's claim of actual prejudice. *Doggett,* 505 U.S. at 658 n.4, 112 S.Ct. 2686.

The same conclusion should apply here. As in *Doggett,* everyone who took part in the conversations is available to testify. In addition, the State has presented evidence that the recordings were lost before charging and, thus, were not lost due to the delay. In short, the State has met its burden of proof.

aware of the charges against him as early as May 2013. Osorio's failure to assert his right in a timely fashion weighs heavily against him. Additionally, Osorio cannot demonstrate that he suffered specific prejudice as a result of the delay, and his acquiescence to the delay ameliorates any generalized prejudice he may have suffered.

Thus, although the delay may have been attributable to the State's negligence, Osorio's failure to assert his speedy trial right weighs heavily against him and, ultimately, leads us to conclude that the State did not violate Osorio's right to a speedy trial. We affirm, as modified, the court of appeals decision and remand this case to the district court for further proceedings consistent with this opinion.

Affirmed as modified.

CHUTICH, J., took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration of this decision.

## DISSENT

HUDSON, Justice (dissenting).

"A defendant has no duty to bring himself to trial...." *Barker v. Wingo*, 407 U.S. 514, 527, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Because the majority undermines this central tenet in its Sixth Amendment analysis, I respectfully dissent.

Both the Sixth Amendment to the United States Constitution and our Minnesota Constitution provide that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI; Minn. Const. art. I, § 6; *see State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005). The Supreme Court has held

that the delay between charging and arrest implicates the Sixth Amendment. *Doggett v. United States*, 505 U.S. 647, 648, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). We use the four-factor test established in *Barker v. Wingo* to evaluate whether a defendant's right to a speedy trial has been violated. Under the *Barker* test, we consider: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's timely assertion of his or her right to a speedy trial, and (4) the prejudice to the defendant caused by the delay. 407 U.S. at 530-33, 92 S.Ct. 2182; *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015).

The majority concludes that only the third factor weighs in favor of the State yet nevertheless concludes that the State did not violate Osorio's right to a speedy trial. I agree with the majority that the first and second factors weigh in Osorio's favor. I write in dissent, however, because I believe that the third and fourth factors favor Osorio as well, and thus he was denied his right to a speedy trial.

### I.

Under the third *Barker* factor, we evaluate "[w]hether and how a defendant asserts his right" to a speedy trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. A timely assertion of the right to a speedy trial ensures that the defendant has not purposefully delayed his or her own trial, and therefore indicates whether the defendant has acquiesced in the delay. Here, however, when the delay falls between charging and arrest, a defendant "is not to be taxed for invoking his speedy trial right only after his arrest" if he did not have knowledge of the charges against him and could not reasonably be expected to assert his right to a speedy trial. *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686. Therefore, the dispositive inquiry under this factor is whether Osorio was aware of the charges. The ma-

jority determines that this factor weighs "heavily" against Osorio because it concludes that Osorio was *likely* aware of the charges against him. In doing so, it improperly infers that an uncounseled defendant's failure to bring himself to trial in response to a summons constitutes an effective waiver of his constitutional right to a speedy trial. I respectfully disagree.

I first depart from the court's analysis of this factor because the majority does not apply the proper standard of review for the district court's findings of fact. Though we review de novo whether a defendant has been denied a speedy trial, *see Taylor*, 869 N.W.2d at 19, we "give 'great deference to the district court's findings of fact and will not set them aside unless clearly erroneous,'" *id.* at 21 (quoting *State v. Andersen*, 784 N.W.2d 320, 334 (Minn. 2010)); *see Doggett*, 505 U.S. at 652-53, 112 S.Ct. 2686 (upholding a district court's factual finding of negligence in a speedy-trial analysis). Here, the district court found that Osorio was not aware of the summons and complaint sent to his California address.[1] Therefore, the district court did not "tax" Osorio for failing to assert his right to a speedy trial until after his arrest. On appeal, the court of appeals reversed the district court by applying a presumption of receipt—commonly known as the mailbox rule—to a criminal summons and complaint. *State v. Osorio*, 872 N.W.2d 547, 555 (Minn. App. 2015) ("We therefore hold that the *Nafstad* presumption applies here.... Under the *Nafstad* presumption, receipt is presumed.") (*citing Nafstad v. Merchant*, 303 Minn. 569, 570, 228 N.W.2d 548, 550 (1975)). Because the court of appeals applied the mailbox rule—a legal presumption—it had no reason to defer to the district court's factual finding that

Osorio was not aware of the summons and complaint.

Now, the majority properly rejects the court of appeals' application of the mailbox rule, but refuses to defer to the district court's finding of fact that Osorio was unaware of the summons and complaint sent to his last known address in California. Instead, the majority "analyze[s] all of the relevant evidence in the record" to find that Osorio was "more likely than not" aware of the charges against him "shortly after the State served the summons and complaint." This analysis disregards the scope of our review on appeal, which requires us to leave in place the district court's findings of fact unless they are clearly erroneous. *Taylor*, 869 N.W.2d at 21. By declining to defer to the district court's finding, the majority determines that this factor weighs "heavily" against Osorio. But when the correct standard of review is applied, this factor weighs against the State. *See id.* The State presented no evidence to suggest that the district court's finding was clearly erroneous. Instead, the State argued to the court of appeals that a *presumption* of receipt should apply. *See Osorio*, 872 N.W.2d at 555. Without that presumption, as the State appears to recognize, the district court's factual finding is not clearly erroneous. Accordingly, I would hold that this factor weighs against the State.

I further depart from the majority's analysis of the third *Barker* factor because the majority assumes that proper service of a summons and complaint is sufficient to infer that a defendant is aware of the charges in the context of a speedy-trial challenge. In my view, the majority's conflation of proper service with knowledge cannot support a conclusion that Osorio

---

1. "The Court finds that the state has not proven that Defendant received notice of the first court appearance."

"more likely than not" had knowledge of the charges. First, this analysis runs counter to the Minnesota Rules of Civil and Criminal Procedure. I agree with the majority that the State properly served Osorio under Minn. R. Crim. P. 3.03, subd. 3, by mailing the summons and complaint to Osorio's last known address in California. But the majority reads into Rule 3 the presumption that, if the State properly serves the defendant, the defendant has knowledge of the charges he or she faces for purposes of the Sixth Amendment. For both service by mail and substitute service, however, a defendant may not be aware of the summons, even if service was proper. In fact, the Minnesota Rules of Civil Procedure, which allow for service by mail under Rule 4.05, explicitly require the recipient to return a "notice and acknowledgement" form to the sender, otherwise "service shall be ineffectual." Therefore, the rules themselves reject the premise that a properly mailed dispatch alone is sufficient to establish knowledge of the charges, even if that mailed dispatch may be sufficient to establish service. Thus, the majority fully endorses a premise that the Rules reject.

In fact, by concluding that Osorio had knowledge of the charges against him based on a record that contained evidence only of service by mail—a correctly addressed envelope and evidence suggesting that the address was accurate—the majority relies on the very same presumption it explicitly rejected in reversing the court of appeals on this issue. I can find no principled distinction between the mailbox rule that the majority purports to reject and the presumption of knowledge that it reads into Rule 3. Both presume knowledge of the charges on the basis of a properly addressed dispatch. Although the majority agrees that the mailbox rule is insufficient to protect the constitutional rights of criminal defendants, it fails to acknowledge that its own presumption suffers from the same flaw.

Second, the majority's willingness to presume Osorio's awareness of the charges based on service by mail runs counter to logical principles that we routinely employ in our case law. The essence of the third *Barker* factor is that if a defendant did not assert his right to a trial in a timely manner, it creates an inference that the defendant was using the delay to his or her own advantage. The majority, however, takes this inference a step further in applying it to these facts, and concludes that even when there is no evidence as to why a pro se defendant remained silent in response to a complaint, the inference that the defendant did not want a speedy trial is *still* proper. In my view, this inference is unwarranted. The record does not show why Osorio did not respond to the summons and complaint. One possibility is that he knew of the charges and acquiesced in the delay of his trial, gambling that it would benefit him to do so. An equally likely possibility is that Osorio was unaware of the charges against him, especially in light of the assurance from the Mound Police Department in 2007 that no warrant had been issued, the discussion he had with an attorney that the statute of limitations had expired, and the more than 6-year gap from the first report of sexual abuse in March 2007 to the State's ultimate decision in May 2013 to charge him. The State provided no evidence to support its preferred presumption—that Osorio had knowledge of the complaint—instead relying *solely* on its proper execution of service.

When it is unclear why a defendant remained silent, our case law traditionally requires both knowledge and comprehension of the charges levied before we impute into that silence any significance. 4 John H. Wigmore, *Evidence in Trials at*

*Common Law* § 1071 (Chadbourn rev. 1972) ("Silence *may* imply assent to the correctness of a communication, but on certain conditions only.... [T]he inference of assent may safely be made only when no other explanation is equally consistent with silence; and there is always another possible explanation—namely, ignorance...."); *see Bathke v. Krassin,* 82 Minn. 226, 228, 84 N.W. 796, 796 (1901) (sending the question of whether a conversation was "heard" by the defendant to the jury before imputing assent to the silence); *see also Sonnesyn v. Hawbaker,* 127 Minn. 15, 15, 148 N.W. 476, 476 (1914) ("Evidence of a demand ... to which no reply is made may be received when the demand is made under such circumstances that a reply would ordinarily be made."). This principle should apply with even more force when an enumerated constitutional right is at stake. Enumerated rights cannot operate on mere probabilities. Therefore, the majority's willingness to conclude that the State's explanation for Osorio's silence was more *likely* than Osorio's explanation cannot satisfy the logical principles that we routinely employ.

Finally, by presuming Osorio's probable knowledge of the charges simply from evidence of service, the majority requires criminal defendants to bring themselves to trial by demanding a speedy prosecution based upon the presumed receipt of a properly addressed summons and complaint, one that they may never have received. This is particularly troubling in this case, because it would have required Osorio to assert his right to a speedy trial before appearing in court and without the benefit of counsel, lest he waive his right entirely. *See Barker,* 407 U.S. at 529, 92 S.Ct. 2182 (instructing courts to attach a different weight to "a situation in which no counsel is appointed"). Osorio was not only uncounseled, but during the period of delay at issue, the State was not yet obligat-

ed to provide appointed counsel. Therefore, the majority's holding allows the State to simultaneously benefit from Osorio's lack of counsel along with his uncounseled failure to invoke his speedy trial right. Further, and more fundamentally, the majority's holding requires Osorio to make an uncounseled appearance to assert his speedy-trial right, in contravention of *Barker's* strict directive that "[a] defendant has no duty to bring himself to trial." *Barker,* 407 U.S. at 527, 92 S.Ct. 2182. In fact, the majority goes so far as to say that Osorio fails to warrant favorable consideration under this factor because he himself did not "do anything directed toward initiating a speedy trial." This holding cannot be squared with *Barker.*

## II.

The fourth and final prong of the *Barker* test concerns whether Osorio suffered prejudice as a result of the delay. *State v. Windish,* 590 N.W.2d 311, 318 (Minn. 1999) (citing *Barker,* 407 U.S. at 532, 92 S.Ct. 2182). "Once triggered by arrest, indictment, or other official accusation, ... the speedy trial enquiry must weigh the effect of delay on the accused's defense...." *Doggett,* 505 U.S. at 655, 112 S.Ct. 2686. The majority holds that the fourth factor weighs neutrally. I would hold that this factor favors Osorio.

Of the three principles animating its protection of the right to a speedy trial, the Supreme Court has indicated that one is the "most serious": to "limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182. The Court has warned that " 'the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Doggett,* 505 U.S. at 654, 112 S.Ct. 2686 (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. 2182); *see Windish,* 590 N.W.2d at 318. Osorio claims this type of prejudice. Spe-

cifically, Osorio argues that he suffered actual prejudice as a result of the delay because of the loss of audio recordings, some of which contained partially exculpatory statements. Neither party disputes that the five recordings at issue are no longer available in audio form. The parties do contest, however, the point in time at which the recordings were lost.

We have previously stated that the prejudice a defendant suffers must be "due to the delay." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986); see *Barker*, 407 U.S. at 532, 534, 92 S.Ct. 2182. After a defendant makes an initial showing that he or she has suffered actual prejudice, the State then has the opportunity to rebut that presumption. *See Doggett*, 505 U.S. at 655, 658 & n.4, 112 S.Ct. 2686. The State conceded at oral argument that it has the burden to rebut an accusation that the defendant suffered actual prejudice.

Here, Osorio presented evidence of the missing audio recordings. The burden then shifted to the State to show that Osorio was not actually prejudiced. It is unclear from the record when the recordings were lost. Other than general explanations about a potential merger between the Mound and Orono police departments and the State's affidavit explaining that the recordings may not have been properly "inventoried" or included in Osorio's file, the State has provided no evidence that conclusively counters Osorio's assertion that the tapes were lost "due to the delay." Moreover, given that the audio recordings were at all times in possession of the police, it was impossible for Osorio to explain the circumstances leading to their destruction. Therefore, the State did not "ably counter[ ]" Osorio's claim that he suffered actual prejudice. *Doggett*, 505 U.S. at 658 n.4, 112 S.Ct. 2686.

The State further argues that, even if the audio recordings are no longer accessible, the participants in the interviews were available to testify, and the transcripts of the interviews were available to Osorio. The availability of the witnesses and transcripts, the State asserts, mitigated any prejudice that he might have suffered due to the loss of the recordings. For two reasons, the transcripts are insufficient to mitigate the actual prejudice that Osorio faces due to the loss of these recordings. First, the transcripts may not be admissible evidence at trial in lieu of the audio recordings either because the original evidence rule would preclude it, Minn. R. Evid. 1002, or they would lack proper authentication, *see State v. Olkon*, 299 N.W.2d 89, 103 (Minn. 1980). This result would clearly prejudice Osorio's ability to present a defense. Second, even if the transcripts were admissible at trial, Osorio would still suffer actual prejudice because transcripts do not convey the full extent of the message contained in audio recordings, including, as the district court noted, the "tone and inflection" of the speakers. Therefore, Osorio made a strong showing that he suffered actual and particularized prejudice—a showing the State does little to "ably counter."

Even still, actual prejudice does not end the inquiry under the fourth *Barker* factor. *Doggett* requires consideration of the prejudice *inherent* in delay, even if the defendant "fail[s] to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." 505 U.S. at 655, 112 S.Ct. 2686. The majority acknowledges *Doggett*'s directive that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," *id.* but the majority does not acknowledge its corollary: lack of affirmative proof of prejudice is not neutral. Instead, "excessive delay *presumptively* compromises the reliability of a trial

in ways that neither party can prove or, for that matter identify." *Id.* at 655, 112 S.Ct. 2686 (emphasis added). The majority further determines that because Osorio, in its view, "acquiesced" to the delay, any prejudice must be ignored. But, for reasons that I articulate in part I, the majority's claim that an uncounseled defendant's failure to respond to a summons constitutes an effective waiver of his constitutional right to a speedy trial is flawed.

For all of the above reasons, I conclude that all of the *Barker* factors weigh in Osorio's favor. Accordingly, I respectfully dissent.

STRAS, Justice (dissenting).

I join in the dissent of Justice Hudson.