*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0401**

State of Minnesota,
Respondent,

vs.

Steven Michael Herrick,
Appellant.

**Filed December 11, 2023**
**Affirmed**
**Segal, Chief Judge**

Dakota County District Court
File Nos. 19AV-VB-22-9250, 19AV-VB-22-9394,
19AV-VB-22-9694, 19AV-VB-22-9844

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Alina Schwartz, Burnsville City Attorney, Campbell Knutson, P.A., Eagan, Minnesota (for respondent)

Steve Herrick, St. Louis Park, Minnesota (pro se appellant)

Considered and decided by Larkin, Presiding Judge; Segal, Chief Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

Appellant was convicted of four petty-misdemeanor offenses for walking on a roadway. He argues that the district court erred in determining that a raised median is part

of the roadway. He also asserts that his right to a speedy trial was violated, along with several other claims. We affirm.

## FACTS

Between September 18 and October 5, 2022, law enforcement issued four citations to appellant Steven Michael Herrick for violating a Minnesota statute that prohibits pedestrians from walking on a roadway when "sidewalks are provided and are accessible and usable." Minn. Stat. § 169.21, subd. 5 (2022). Herrick was walking or standing on medians at intersections along County Road 42 in Burnsville when the citations were issued.

At an initial hearing on the four citations held on November 1, 2022, Herrick asserted that he had been holding a sign on the medians in Burnsville for ten years and had been told by the city attorney that it was not illegal. He then made a speedy-trial demand, and the district court set all four cases for trial on December 2, 2022. Shortly after the hearing, Herrick filed a motion to dismiss the citations. He also requested that the district court issue subpoenas for seven witnesses, including the county and city attorneys. The district court, however, issued subpoenas "only for [the] officers who were actually involved in investigating the charges against Mr. Herrick."

Respondent State of Minnesota later requested that three of the court trials be continued because one of the state's witnesses—the police sergeant who issued three of the citations—was on medical leave and unable to testify. The district court continued the three court trials until February 17, 2023, but kept the trial date of December 2, 2022, for the fourth case and ordered "[t]here shall be no further continuances of these matters."

2

On December 2, Herrick agreed to continue the trial in the fourth case to be held at the same time as the other three cases because he was unprepared for trial. The district court then proceeded to hear arguments on Herrick's motion to dismiss. Herrick maintained that he had a constitutional right to stand on the median with his sign and that the statute did not apply because a median is not part of the roadway for purposes of Minn. Stat. § 169.21, subd. 5. The district court advised Herrick in an order that he must provide notice to the attorney general if he wished to challenge the constitutionality of the statute; Herrick did not provide such notice. The district court denied Herrick's motion to dismiss because it concluded that the median was part of the roadway for purposes of Minn. Stat. § 169.21, subd. 5. The district court also found that, by failing to provide notice to the attorney general, Herrick had waived his constitutional challenge to the statute.

In January 2023, Herrick requested that the court trials be continued to allow him to raise money to hire a lawyer and because he planned to travel to Texas and would not be back until May. The district court denied the request and held the court trials as scheduled on February 17, 2023.

At the start of the trials, Herrick asserted that he had the right to call witnesses, but the district court declined to reconsider the court's prior denial of Herrick's request to issue subpoenas for certain witnesses. Herrick also generally stated that he needed an attorney. After Herrick repeatedly interrupted the proceedings, the district court gave him a warning and indicated that he would be held in contempt if he continued to be disruptive. Herrick then left the courtroom and the court trials were held in absentia. The district court found Herrick guilty and ordered him to pay a fine of $20 plus a surcharge of $80 in each case.

3

**DECISION**

**I.     The district court did not err in determining that the median is part of the roadway.**

Herrick argues that the district court's decision was based on a misinterpretation of the law and that Minn. Stat. § 169.21, subd. 5, does not apply in this case. We review questions of statutory interpretation de novo. *Roberts v. State*, 945 N.W.2d 850, 853 (Minn. 2020).

Subdivision 5 of section 169.21 provides that "[w]here sidewalks are provided and are accessible and usable it shall be unlawful for any pedestrian to walk . . . along and upon an adjacent roadway." It is undisputed that, at the locations where Herrick was cited, sidewalks were available, accessible, and usable. Thus, the only remaining question is whether the medians where Herrick was standing are part of the "roadway."

"Roadway" is defined as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder." Minn. Stat. § 169.011, subd. 68 (2022). The district court reasoned that the median is part of the "roadway" because "the median is designed to separate traffic travelling [in] opposite directions" and "is meant to improve the highway where vehicles will travel, by . . . improving the highway's safety." (Emphasis omitted.) As noted above, the definition of "roadway" explicitly includes areas "improved [or] designed . . . for vehicular travel." *Id.* We agree with the district court that medians constitute areas that are designed for vehicular travel—even if vehicles are not intended to travel on or over the medians themselves—and

thus come within the definition of a "roadway."[1] We therefore reject Herrick's argument that Minn. Stat. § 169.21, subd. 5, does not apply to medians.

## II. Herrick's constitutional claims do not entitle him to relief.

Herrick generally claims that his constitutional rights were violated. The district court declined to consider Herrick's constitutional challenge to the statute because Herrick failed to provide notice to the attorney general after being directed to do so by the district court. The constitutional issue is therefore not properly before this court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *see also State v. Jorgenson*, 934 N.W.2d 362, 367 n.2 (Minn. App. 2019) ("[W]e note that a party challenging the constitutionality of a statute must give notice to the Minnesota Attorney General . . . ."), *aff'd*, 946 N.W.2d 596 (Minn. 2020).

Herrick also asserts that he was denied his right to: (1) a fair trial, (2) a speedy trial, (3) the freedom of speech, (4) counsel, (5) fair treatment, and (6) present witnesses of his choosing. Several of Herrick's claims can be dispensed with in short order, such as Herrick's claim that he was denied a fair trial and fair treatment. These claims are based on his allegation that the transcript of the trials was fabricated and assertions of misconduct by the district court, law enforcement, and government attorneys. Many of these allegations are based on information that is neither in nor supported by the record. *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the

---

[1] This court recently considered the same issue in another case involving Herrick and similarly concluded in that case that a median was part of the "roadway." *See State v. Herrick*, No. A23-0269 (Minn. App. Sept. 21, 2023) (order op.).

transcript of the proceedings, if any, shall constitute the record on appeal."). Herrick's challenge that the statute violates his free speech rights is not properly before us because he failed to provide notice of the claim to the attorney general. And, as to Herrick's claim that he was denied a right to counsel, Herrick was not entitled to counsel because the citations were for petty-misdemeanor offenses. Minn. R. Crim. P. 23.05, subd. 2.

We address in turn below Herrick's two remaining claims—his speedy-trial claim and his challenge to the district court's denial of his request to subpoena witnesses other than law enforcement who were involved in the cases.

### A.      Speedy Trial

The United States and Minnesota Constitutions afford criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. Pursuant to Minn. R. Crim. P. 11.09, a trial must start within 60 days of a speedy-trial demand unless the court finds good cause for a later trial date. If a defendant has been deprived of his constitutional right to a speedy trial, the criminal case against him must be dismissed. *State v. Osorio*, 891 N.W.2d 620, 627 (Minn. 2017). This court reviews a claimed speedy-trial violation de novo. *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015).

"To determine whether a speedy-trial violation has occurred, we apply the four-factor balancing test set forth by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 [(1972)]." *Osorio*, 891 N.W.2d at 627. The four factors are: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." *Id.* (quotation omitted). It is "a difficult and sensitive balancing process"

in which the court considers "the conduct of both the State and the defendant." *Id.* at 628 (quotations omitted).

Here, Herrick made a speedy-trial demand on November 1, 2022. The district court initially set the court trials for December 2, 2022—within the 60-day window—but later found good cause to continue three of the court trials because one of the state's witnesses was on medical leave and unavailable to testify. *See State v. Mikell*, 960 N.W.2d 230, 251 (Minn. 2021) (noting that good cause for a continuance may include when "a key witness of the State is unavoidably unavailable"). Herrick agreed to continue the fourth court trial to be heard at the same time as the other three. As a result, the court trials did not occur until February 17, 2023—108 days after Herrick made the speedy-trial demand.

We are not persuaded, however, that the delay in bringing the cases to trial amounted to a deprivation of Herrick's constitutional right to a speedy trial. The only delay attributable to the state was for good cause. The court trial in the fourth case was scheduled to be held within the 60-day window, but when Herrick appeared on the scheduled date, he agreed to continue the court trial because he was not prepared. And despite his initial speedy-trial demand, Herrick later requested that the trials be continued to a later date because he wanted to hire an attorney and planned to be in Texas until May. Herrick's behavior suggests he was not prejudiced by the delay because he admitted that he was not prepared for trial in the fourth case and ultimately requested an even longer delay than was granted by the district court. Additionally, he was not incarcerated during the pendency of the matters. Under these circumstances, we discern no speedy-trial violation.

7

**B.     Witnesses**

Herrick argues that he was denied the right to call witnesses at trial. "The right to call witnesses in one's behalf is an essential element of a fair trial and due process." *State v. Super*, 781 N.W.2d 390, 395 (Minn. App. 2010) (quotation omitted), *rev. denied* (Minn. June 29, 2010). But the district court's decision to deny a request to issue a subpoena is an evidentiary matter in which this court gives "great deference to a district court's discretion." *State v. Wood*, 845 N.W.2d 239, 245 (Minn. App. 2014), *rev. denied* (Minn. June 17, 2014). The district court properly exercises this discretion when it denies a request to subpoena a witness who has no firsthand knowledge of the matter. *See id.*

Herrick requested the district court issue subpoenas for seven witnesses, including various law-enforcement officers and government attorneys. The district court ultimately determined: "Subpoenas will issue only for officers who were actually involved in investigating the charges against Mr. Herrick." The district court thus issued subpoenas for only those officers who had firsthand knowledge of the conduct at issue, which is a proper exercise of the district court's discretion. *See id.* Herrick was therefore not denied his right to call witnesses at trial.

**Affirmed.**

8